**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL W. RUMSEY,

               Plaintiff,

     v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

             Defendant.

Civil Action No. 1:24-cv-12187-AK

**INTERNATIONAL BUSINESS MACHINES CORPORATION'S MEMORANDUM IN**
**SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ...................................................................................................................... 4

I.      THE TIMELINESS PROVISION IS VALID AND ENFORCEABLE............................. 4

        A.      Rumsey Had A Fair Opportunity To Pursue His Claims In Arbitration................ 4

        B.      Rumsey's Counter-Arguments Are Meritless......................................................... 7

                1.      Rumsey has no "substantive right" to the ADEA's limitations period....... 8

                2.      The Timeliness Provision allows for effective vindication. ..................... 10

                3.      The Timeliness Provision does not interfere with Rumsey's participation
                        in the EEOC process. ............................................................................... 13

                4.      The Timeliness Provision does not interfere with the EEOC's
                        investigatory process................................................................................ 16

II.     THE TIMELINESS PROVISION IS NOT UNCONSCIONABLE................................. 17

III.    A VALID AGREEMENT WAS FORMED. .................................................................... 19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

Page

CASES

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009).......................................................................5, 8, 13, 14

*159 MP Corp. v. Redbridge Bedford, LLC*,
160 A.D.3d 176 (N.Y. App. Div. 2018) ...................................................19

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*,
78 N.Y.2d 88 (1991) .................................................................................19

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013)..........................................................................4

*Alston v. Town of Brookline*,
997 F.3d 23 (1st Cir. 2021)........................................................................14

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................4, 5, 13

*Anderson v. Comcast Corp.*,
500 F.3d 66 (1st Cir. 2007)..................................................................11, 13

*Browning v. AT&T Paradyne*,
120 F.3d 222 (11th Cir. 1997) .....................................................................8

*Cerjanec v. FCA US, LLC*,
2017 WL 6407337 (E.D. Mich. Dec. 15, 2017) .........................................9

*Chandler v. IBM*,
2022 WL 2473340 (S.D.N.Y. July 6, 2022),
*aff'd*, 2023 WL 4987407 (2d Cir. Aug. 4, 2023).....................................7, 10, 17, 18

*Clorox Co. P. R. v. Proctor & Gamble Com. Co.*,
228 F.3d 24 (1st Cir. 2000).........................................................................4

*Curtis v. Marino*,
201 A.D.3d 584 (N.Y. App. Div. 2022) ...................................................19

*Davis v. Mills*,
    194 U.S. 451 (1904)..................................................................................................10

*EEOC v. Astra U.S.A., Inc.*,
    94 F.3d 738 (1st Cir. 1996).......................................................................................14

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)..................................................................................................17

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)....................................................................................................4

*Estle v. IBM*,
    23 F.4th 210 (2d Cir. 2022) ..............................................................................5, 8, 13

*Fowler v. Boise Cascade Corp.*,
    948 F.2d 49 (1st Cir. 1991)........................................................................................20

*Francis-Sobel v. Univ. of Maine*,
    597 F.2d 15 (1st Cir. 1979)........................................................................................14

*Garfield v. J.C. Nichols Real Estate*,
    57 F.3d 662 (8th Cir. 1995) ........................................................................................9

*Gildea v. BLDG Mgmt.*,
    2011 WL 4343464 (S.D.N.Y. Aug. 16, 2011)........................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)............................................................................................ passim

*Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc.*,
    232 N.Y. 112 (1921) .................................................................................................19

*Howell v. Rivergate Toyota, Inc.*,
    144 F. App'x 475 (6th Cir. 2005) ...............................................................................9

*In re IBM Arb. Agreement Litig.*,
    2022 WL 2752618 (S.D.N.Y. July 14, 2022), *aff'd* 76 F.4th 74 (2d Cir. 2023),
    *cert. denied sub nom. Abelar v. IBM*, 144 S. Ct. 827 (2024)............................ passim

*In re Lipper Holdings, LLC*,
    766 N.Y.S.2d 561 (1st Dep't 2003) ...........................................................................20

*In re Second Wave IBM Arb. Agreement Litig.*,
   No. 21-CV-09574, ECF No. 15 (S.D.N.Y. Dec. 14, 2021) ....................................................16

*Johnson v. Rodriguez*,
   943 F.2d 104 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992) .........................................14

*Lodi v. IBM*,
   2022 WL 2669199 (S.D.N.Y. July 11, 2022), *aff'd*, 2023 WL 4983125 (2d
   Cir. Aug. 4, 2023) ....................................................................................................1, 6

*Logan v. MGM Grand Detroit Casino*,
   939 F.3d 824 (6th Cir. 2019) .........................................................................................9

*Lugihibl v. Fifth Third Bank*,
   2015 WL 1235221 (N.D. Ill. Mar. 16, 2015)..................................................................9

*Marie v. Allied Home Mortg. Corp.*,
   402 F.3d 1 (1st Cir. 2005)...........................................................................................17

*McKee v. AT&T Corp.*,
   164 Wash. 2d 372 (2008)............................................................................................10

*Morrison v. Cir. City Stores, Inc.*,
   317 F.3d 646 (6th Cir. 2003) .........................................................................................9

*Owens v. IBM*,
   2024 WL 2991203 (D.C. Cir. June 14, 2024)..................................................................6

*Ragone v. Atlantic Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010).................................................................................10, 17

*Ramirez v. Charter Communications, Inc.*,
   16 Cal. 5th 478 (2024) .........................................................................................10, 18

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   170 F.3d 1 (1st Cir. 1999)................................................................................4, 10, 13

*Rusis v. IBM*,
   529 F. Supp. 3d 178 (S.D.N.Y. 2021)..............................................................................7

*Sarfati v. Wood Holly Assocs.*,
   874 F.2d 1523 (11th Cir. 1989) ...................................................................................10

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003) ........................................................................................... 19

*Smith v. IBM*,
    2023 WL 3244583 (11th Cir. May 4, 2023) ................................................................. 5, 6

*Smithson v. Hamlin Pub, Inc.*,
    2016 WL 465564 (E.D. Mich. Feb. 8, 2016) ................................................................... 9

*Thompson v. Fresh Products, LLC*,
    985 F.3d 509 (6th Cir. 2021) ........................................................................................... 9

*Washbish v. IBM*,
    2023 WL 2433431 (D. Conn. Mar. 9, 2023) ................................................................... 6

*Wilkerson v. Fed. Express*,
    2011 WL 2176823 (D. Md. June 2, 2011) ....................................................................... 9

*Wooten v. IBM*,
    No. 22-cv-12476, Dkt. No. 39 (E.D. Mich. June 28, 2023) ............................................ 6

**STATUTES**

29 U.S.C. § 626 ......................................................................... 3, 5, 10, 11, 13, 17

42 U.S.C. § 2000e-5(e)(l) ....................................................................................................... 3

Mass. Gen. Laws Chapter 260 § 5A ..................................................................................... 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 2, 4, 20

## **INTRODUCTION**

Over the past several years, plaintiffs across the country have challenged the very arbitration agreement at issue here, arguing that, for various reasons, its timeliness provision impermissibly shortens the period to file a claim under the Age Discrimination in Employment Act ("ADEA"). Over a dozen federal judges—including unanimous panels of the U.S. Courts of Appeals for the Second, Eleventh and D.C. Circuits—have rejected this argument. And the U.S. Supreme Court has declined to grant certiorari to consider it.

While the precise legal theories in these cases have varied, their logic compels dismissal here. The plaintiff, Michael W. Rumsey ("Rumsey"), is a former IBM employee who agreed to arbitrate the claims he asserts against IBM here. Rumsey also agreed that his ADEA claims "shall be deemed waived" if he failed to send IBM an arbitration demand within the ADEA's period for filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC")— that is, within 300 days of his termination notice. Although he was not required to do so, Rumsey filed an EEOC charge within this timeframe, but he failed to send IBM an arbitration demand. When Rumsey tendered the demand years later, he and IBM agreed to stay his arbitration pending resolution of the aforementioned cases challenging the timeliness provision. After those challenges uniformly failed, Rumsey filed this action (in a new forum), presumably to avoid Second Circuit precedent dismissing claims nearly identical to his. *See Lodi v. IBM*, 2023 WL 4983125 (2d Cir. Aug. 4, 2023).

As numerous courts have explained, the Federal Arbitration Act ("FAA") requires the enforcement of arbitration agreements when they provide potential plaintiffs a "fair opportunity" to arbitrate their claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("*Gilmer*"). And every court that has considered the issue has concluded that IBM's arbitration agreement provides such an opportunity because it affords plaintiffs "the same amount of time to

file an arbitration demand as they would have had to file an EEOC charge under the ADEA." *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 84 n.6 (2d Cir. 2023) ("*In re IBM Arb.*"), *cert. denied sub nom. Abelar v. IBM*, 144 S. Ct. 827 (Mem.) (2024).

Rumsey's contrary arguments fail as a matter of law, a reality that Rumsey's legal arguments masquerading as allegations cannot avoid. Rumsey's argument that the ADEA's limitations provision is an unwaivable substantive right is inconsistent with U.S. Supreme Court precedent, First Circuit precedent, and legions of other federal court opinions. Rumsey has no "substantive right" to apply the ADEA's limitations period in arbitration because it applies *only* to the filing of a "civil action." Rumsey also claims that he cannot effectively vindicate his rights under the ADEA, but he can point to nothing about the Timeliness Provision, itself, that prevented him from filing a timely arbitration demand. Rumsey's own inaction is solely to blame. And Rumsey's claim that he has a substantive right to participate in the EEOC's conciliation process was in no way hindered by the Timeliness Provision; Rumsey in fact filed an EEOC charge.

Rumsey's alternative claims—that the demand deadline is unconscionable (Doc No. 22, VIII) and too indefinite to be binding (Doc No. 22, IX)—are also meritless. The unconscionability claim is inconsistent with New York law. Every federal court considering the provision has been able to construe it and has read it as mirroring the EEOC-charge deadline. Rumsey's First Amended Complaint ("FAC") fails to state a claim as a matter of law and should be dismissed with prejudice. *See* Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Rumsey is a former IBM employee who in March 2016 received notice that he would be separated from his employment in a reduction in force. Doc No. 22, ¶ 100. As part of a severance package, IBM offered Rumsey separation payments and benefits in exchange for his signing a Resource Action Separation Agreement (the "Separation Agreement"). Doc No. 22-2, IBM

Separation Agreement.[1]  IBM gave Rumsey thirty days to consider the offer and advised him in writing to consult an attorney.  *Id.* at 2.  Rumsey accepted the offer and signed the Separation Agreement.  Doc No. 22, ⁋ 39.  By doing so, Rumsey waived and released any claim he might have against IBM except for certain "Covered Claims," which include ADEA claims.  Doc No. 22-2 at 2.  Rumsey agreed that the Covered Claims would "be resolved on an individual basis by private, confidential, final and binding arbitration."  *Id.*

The IBM Arbitration Procedures (the "Agreement") provide that the "filing of a charge or complaint with a government agency . . . shall not . . . extend the time for submitting a demand for arbitration."  Doc No. 22-2 at 5.  The Agreement also contains an arbitration demand requirement and deadline (the "Timeliness Provision"), which provides:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived.

*Id.*  Because the ADEA has an exhaustion requirement, ADEA claims must be "brought before a government agency."  And because Rumsey was required to file an EEOC charge within 300 days of his termination (December 2016), he was required to submit his arbitration demand within that same period.  *See* 42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. § 626(d)(1); Doc No. 22, ⁋ 100.  Rumsey gave IBM his demand on November 23, 2021—nearly five years too late.  *Id.* ⁋⁋ 13, 88.

After Rumsey tendered the demand, IBM and Rumsey agreed to stay arbitration pending the resolution of cases challenging the Timeliness Provision.  *Id.*, ⁋⁋ 89-90.  After those challenges uniformly failed, Rumsey filed this action.

---

[1] The page numbers cited for the Separation Agreement (Doc. No. 22-2) refer to the Exhibit page numbers, and not to the document's original page numbers.

**STANDARD OF REVIEW**

A motion to dismiss must be granted if the complaint fails "to state a claim upon which relief can be granted," accepting well-pleaded facts as true. Fed. R. Civ. P. 12(b)(6). But a court should not credit "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). Finally, a court may consider documents that are incorporated in, or "integral" to, the complaint, as well as judicially noticeable facts. *Clorox Co. P. R. v. Proctor & Gamble Com. Co.,* 228 F.3d 24, 32 (1st Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(6); *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). The Court should not credit allegations that are "conclusively contradicted" by such sources. *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 47 (D. Mass. 2006).

**ARGUMENT**

**I.    THE TIMELINESS PROVISION IS VALID AND ENFORCEABLE.**

Rumsey's primary claim—that the Timeliness Provision is unenforceable—fails as a matter of law. Every federal court that has considered this argument has rejected it.

**A.    Rumsey Had A Fair Opportunity To Pursue His Claims In Arbitration.**

"[C]ourts must 'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("*Italian Colors*"), including the parties' "chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). "[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir. 1999) (quoting *Gilmer*, 500 U.S. at 31). With respect to arbitration in the ADEA context in particular, the Supreme Court has rejected

the argument that "arbitration is inconsistent with the ADEA," as well as "a host of challenges to the adequacy of arbitration procedures." *Gilmer*, 500 U.S. at 30. While the ADEA expressly grants plaintiffs the right to sue "in any court of competent jurisdiction," and the right to pursue a "collective action," those rights can be waived in an arbitration agreement. *Id.* at 29, 32 (citation omitted). Indeed, the ADEA provides that plaintiffs "shall be entitled to a trial by jury," 29 U.S.C. § 626(c)(2), but in *Gilmer* the Court effectively found that right waivable. *Id.* at 30.

The Supreme Court has suggested in *dicta*—but has never actually held—that a court may decline to enforce an arbitration provision when it would "prevent the 'effective vindication' of a federal statutory right." *Italian Colors*, 570 U.S. at 235 & n.2; *see also Smith v. IBM*, 2023 WL 3244583, at *6 (11th Cir. May 4, 2023) (Supreme Court "has never applied the effective-vindication rule to deny enforcement of an arbitration agreement"). Effective vindication is intended "to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'" *Italian Colors*, 570 U.S. at 236 (citation omitted); *Smith*, 2023 WL 3244583, at *6 (effective vindication doctrine, "if it remains viable, is limited to preventing the prospective waiver of a party's right to pursue statutory remedies") (internal quotation marks, emphasis, and citation omitted).

Accordingly, to the extent it is viable, the "effective-vindication" doctrine means that an arbitration agreement cannot "forbid[] the assertion of certain statutory rights." *Italian Colors*, 570 U.S. at 236. Nor can it make pursing those rights "impossible." *Id.* & n.3. In the ADEA context, effective vindication would prohibit, at most, arbitration provisions that make it impossible for plaintiffs to assert their "right to be free from workplace age discrimination." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009) (defining ADEA's rights); *see also Estle v. IBM*, 23 F.4th 210, 214 (2d Cir. 2022) (same). All other arbitration provisions are enforceable.

Nothing about the Timeliness Provision made it impossible for Rumsey to pursue an

ADEA claim in arbitration. Indeed, two district courts and the Second Circuit have rejected challenges to IBM's Timeliness Provision on the *same* facts and in the *same* procedural posture as Rumsey's claims here. *See Lodi v. IBM*, 2022 WL 2669199, at *4 (S.D.N.Y. July 11, 2022), *aff'd*, 2023 WL 4983125 (2d Cir. Aug. 4, 2023); *Washbish v. IBM*, 2023 WL 2433431, at *1 (D. Conn. Mar. 9, 2023). In *Lodi*, the plaintiff (like Rumsey) had filed a timely EEOC charge but not a timely arbitration demand. Judge Koeltl (S.D.N.Y.) held that the "fact that the plaintiff could have filed a timely ADEA action in federal court but for the Agreement and the Timing Provision does not render the Timing Agreement unenforceable." 2022 WL 2669199, at *4. "The plaintiff had a full and fair opportunity to file her Arbitration Demand within the applicable limitations period and simply failed to do so. The fact that the plaintiff may have had more time to file her claim in federal court had she not agreed to arbitrate her ADEA claims is immaterial." *Id.* The Second Circuit summarily affirmed the decision, citing the district court's analysis, 2023 WL 4983125, at *1, and added that because "[t]he Timeliness Provision clearly notes that the ADEA's administrative-exhaustion requirement does not apply" under the Agreement, "the EEOC's charge-filing process" does not "have any place in [these] arbitrations." *In re IBM Arb.*, 76 F.4th at 83. The Supreme Court denied *certiorari*, *see Abelar v. IBM*, 144 S. Ct. 827 (Mem.) (2024).

Indeed, *every* federal court considering whether the Timeliness Provision precludes effective vindication has held that it does not, because it mirrors the ADEA's own exhaustion requirement.[2] "[T]o hold that Plaintiffs were prevented by the Timeliness Provision from

---

[2] *See, e.g.*, *In re IBM Arb.*, 76 F.4th at 84 n.6 (Timeliness Provision "gave Plaintiffs the same amount of time to file an arbitration demand as they would have had to file an EEOC charge under the ADEA."); *Owens v. IBM*, 2024 WL 2991203, at *1 (D.C. Cir. June 14, 2024) (per curiam) (same); *Smith*, 2023 WL 3244583, at *1 (same where "deadline was 180 days"); *Wooten v. IBM*, No. 22-cv-12476, ECF No. 39, at 10 (E.D. Mich. June 28, 2023) (same); *In re IBM Arb.*, 2022 WL 2752618, at *9 (S.D.N.Y. July 14, 2022) (rejecting effective vindication argument because "the timeline for filing an arbitration demand established by the Timeliness Provision is the *same* 180- or 300-day deadline provided by the ADEA itself"); *Lodi*, 2022 WL 2669199, at *4

effectively vindicating their rights under the ADEA would be to hold that no plaintiff can effectively vindicate his or her rights under the statute," because no plaintiff could satisfy the ADEA's exhaustion requirement.  *In re IBM Arb.*, 2022 WL 2752618, at *9.  That "would be 'patently absurd,'" "border[ing] on frivolous."  *Id.* (quoting *Rusis*, 529 F. Supp. 3d at 194 n.8).

The exact same reasoning applies here.  Rumsey "do[es] not identify any obstacle, let alone one imposed by IBM," that prevented him from sending IBM a timely arbitration demand.  *Id.* Rather, Rumsey *affirmatively disproved* his effective vindication argument by filing an EEOC charge within that period.  Doc No. 22, ¶ 9.  Having done so, Rumsey cannot credibly claim that he lacked sufficient knowledge or time to send IBM an arbitration demand.  It would have been beyond simple for Rumsey to file his charge and simultaneously send a copy of it to IBM with a cover letter stating that he demanded arbitration for the reasons explained "in the attached." Rumsey's failure to file a timely arbitration demand is due entirely to his inaction.

### B.    Rumsey's Counter-Arguments Are Meritless.

Rumsey's contrary arguments are meritless.  Rumsey claims that the Timeliness Provision is unenforceable because it:  (i) is an impermissible waiver of Rumsey's "substantive rights" (Doc No. 22, ¶¶ 96-103); (ii) prevents him from effectively vindicating his ADEA claim (*id.* ¶¶ 104-124); (iii) prevents him from effectively vindicating his purported right to "participate in and benefit from the EEOC process" (*id.* ¶ 104), and (iv) undermines the EEOC's investigatory process (*id.* ¶ 125).  Each argument lacks merit.  Indeed, they are based on erroneous legal assertions posing as factual allegations, rank speculation, or unsupported allegations about "what might have happened" had Rumsey acted differently.  But the reality is that Rumsey did *not* send IBM an

---

(same); *Chandler v. IBM*, 2022 WL 2473340, at *4 (S.D.N.Y. July 6, 2022) (same), *aff'd*, 2023 WL 4987407 (2d Cir. Aug. 4, 2023); *Rusis v. IBM*, 529 F. Supp. 3d 178, 194 n.8 (S.D.N.Y. 2021) (same).

arbitration demand based on the contents of his EEOC charge. He did *not* request that IBM stay the arbitration demand. He did *not* seek a stay from the arbitrator. He did *not* follow the express advice to hire counsel to review the Timeliness Provision. Having failed to take any of these actions, Rumsey has *no* basis to allege that the Timeliness Provision, as opposed to his own conduct, deprived him of anything.

### 1.    Rumsey has no "substantive right" to the ADEA's limitations period.

Rumsey's first argument (Doc No. 22, ¶¶ 96-103)—that the Timeliness Provision is unwaivable because it is a "substantive right"—is wrong on multiple levels. *First*, nothing in the ADEA's text suggests that Congress intended the ADEA's timeliness framework to apply in arbitrations, let alone confer a substantive right unwaivable in arbitration. To the contrary, the ADEA's administrative-exhaustion process, which triggers the Act's timeliness framework, does *not* apply to arbitrations; it and the ADEA's limitations provision expressly apply only to "civil action[s]." *In re IBM Arb*, 76 F.4th at 83 (quoting 29 U.S.C. § 626(d)(1)); *Gilmer*, 500 U.S. at 29.

*Second*, U.S. Supreme Court precedent instructs that the ADEA's timeliness framework is *procedural*, not substantive. The only substantive right conferred by the ADEA for FAA purposes is the "right to be free from workplace age discrimination," *14 Penn Plaza*, 556 U.S. at 265, which the Supreme Court has "distinguished" from "procedural [ones], like 'the right to seek relief from a court in the first instance.'" *Estle*, 23 F.4th at 214 (citation omitted). "The ADEA's limitations period falls comfortably in the latter category; it is more akin to the procedural 'right to seek relief from a court in the first instance' than it is to the substantive 'right to be free from workplace age discrimination.'" *In re IBM Arb.*, 2022 WL 2752618, at *7 (citation omitted). Indeed, a contrary holding would be in direct conflict with decisions from three circuit courts. *See, e.g., Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997) ("[T]he ADEA limitations period is a procedural rather than substantive requirement . . ."); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d

662, 665 (8th Cir. 1995) (same); *In re IBM Arb.*, 76 F.4th at 84 (rejecting argument that "the ADEA's timing provisions" are substantive law created by the ADEA).

*Third*, Rumsey cites *zero* cases holding that the ADEA's limitations period is a substantive right unwaivable in arbitration. There are none. Courts across the country routinely enforce shortened limitations periods for ADEA claims. *See, e.g.*, *supra* n.2.[3] Rumsey's sole supposedly contrary authority, *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021) (Doc No. 22, ¶¶ 103, 107, 127), is inapposite. There, the Sixth Circuit held that the ADEA does not allow parties to shorten the time for filing a claim *in court. Thompson* "did not involve an arbitration agreement or the FAA." *In re IBM Arb.*, 76 F.4th at 84. And the court "relied extensively" on *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), which "explicitly limited its holding to 'contractually shortened limitation period[s] . . . *outside of . . . arbitration agreements*[s].'" *In re IBM Arb.*, 2022 WL 2752618, at *8 (quoting *Logan*, 939 F.3d at 839). As a result, *Thompson* "had no occasion to consider . . . the arbitration context." *Id.* In the relevant authority, the Sixth Circuit has held that limitations periods can be shortened in arbitration agreements, *see Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc), and upheld an arbitration provision that contained a 180-day limitations period for ADEA claims. *Howell*, 144 F. App'x at 480. Accordingly, Rumsey's portrayal of *Thompson* is inaccurate.

Rumsey's remaining authorities—none of which concerns the ADEA—are equally unavailing. For example, in *Ramirez v. Charter Communications, Inc.*, 16 Cal. 5th 478, 501

---

[3] *See also Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005) (per curiam) (upholding "180-day limitations period" for ADEA claims); *Cerjanec v. FCA US, LLC*, 2017 WL 6407337, at *7–*8 (E.D. Mich. Dec. 15, 2017) (same because "parties to a contract may agree to an abbreviated period of limitations different from the period authorized by statute") (citations omitted); *Smithson v. Hamlin Pub, Inc.*, 2016 WL 465564, at *2–*3 (E.D. Mich. Feb. 8, 2016) (similar); *Wilkerson v. Fed. Express*, 2011 WL 2176823, at *1, *4 (D. Md. June 2, 2011) (six months); *Lugihibl v. Fifth Third Bank*, 2015 WL 1235221, at *1 (N.D. Ill. Mar. 16, 2015) (same).

(2024), and *McKee v. AT&T Corp.*, 164 Wash. 2d 372, 399 (2008) (en banc) (*see* Doc No. 22, ¶¶ 116-117), the courts expressly *rejected* Rumsey's argument, holding that "[i]t is settled that parties may agree, in an arbitration agreement or otherwise, to shorten the limitations period applicable to a claim." *Ramirez*, 16 Cal. 5th at 501; *McKee*, 164 Wash. 2d at 399 ("Generally, parties can shorten the applicable statute of limitations by contract."). None of Rumsey's remaining cited authorities (Doc No. 22, ¶¶ 115, 117) hold otherwise. They concern whether a shortened limitations period violates the effective vindication doctrine (which the Timeliness Provision does not, *see infra* § 2),[4] or is unconscionable (which the Timeliness Provision is not, *see infra* Rom. II).[5] Or they make clear that limitations periods are *limitations* on the underlying substantive right, *not* substantive rights themselves.[6]

*Finally*, Rumsey's OWBPA claim is meritless (Doc No. 22, ¶¶ 23, 74-79). OWBPA requires an employer to make disclosures to an employee when the employee waives a "right or claim" under the ADEA. *See* 29 U.S.C. § 626(f)(1). But as the First Circuit has made clear, OWBPA does not protect "procedural rights." *Rosenberg*, 170 F.3d at 13; *see also In re IBM Arb.*, 76 F.4th at 82 (holding same); *Chandler*, 2022 WL 2473340, at *5 (same).

### 2. The Timeliness Provision allows for effective vindication.

With respect to Rumsey's effective vindication claim (Doc No. 22, ¶¶ 104-124), *every*

---

[4] *E.g.*, *Anderson v. Comcast Corp.*, 500 F.3d 66 (1st Cir. 2007); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010); *Gildea v. BLDG Mgmt.*, 2011 WL 4343464, at *4 (S.D.N.Y. Aug. 16, 2011).

[5] *E.g.*, *Ramirez*, 16 Cal. 5th at 501 (holding limitations periods are not substantive rights but finding 60-day limitation unconscionable); *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1095 (9th Cir. 2024) (similar); *McKee*, 164 Wash. 2d at 399 (similar).

[6] *E.g.*, *Sarfati v. Wood Holly Assocs.*, 874 F.2d 1523 (11th Cir. 1989); *Davis v. Mills*, 194 U.S. 451, 454 (1904); (Doc No. 22, ¶ 103). In those cases, the courts held that the limitations period was "a substantive limit on the right" to bring a claim, not a procedural limit. *Sarfati*, 874 F.2d at 1526. That is entirely unhelpful to Rumsey, as these decisions make clear that limitations periods are not substantive *rights* that belong to a plaintiff but are statutory *limits* on the plaintiff's underlying right to bring a claim.

federal court that has considered the issue has held that arbitration provisions shortening the ADEA's timeliness requirement to 300 (or even 180) days allow for effective vindication of an ADEA claim and enforced the arbitration provision. *See, e.g.*, *supra* n.2; pp. 6-8.

Contrary to Rumsey's claim (Doc No. 22, ¶¶ 2-3, 104-115), the First Circuit's decision in *Anderson v. Comcast Corp.*, 500 F.3d 66 (1st Cir. 2007), does not compel a different result. There, the court held that whether the plaintiff could effectively vindicate a state law claim in light of an arbitration provision that shortened a state limitations period turned on whether (i) there was a "conflict between an explicit statutory time limit and the arbitration agreement's [shorter] limitation," and (ii) if so, whether the Massachusetts legislature intended to allow for a waiver of the limitations period. *Id.* at 75-77. Citing the text and history of the state statute and Massachusetts law limiting the waiver of state law requirements, the First Circuit concluded that the arbitration agreement's limitations period precluded effective vindication. *Id.*

Here, there is no, and can be no, conflict between the ADEA and the Timeliness Provision because the ADEA's exhaustion and timeliness provisions do not apply to arbitration. *See supra* pp. 8. In addition, contrary to Rumsey's claim (Doc No. 22, ¶ 126), the ADEA's text and structure prove that Congress did not intend to preclude shorter limitations periods: plaintiffs can file suit, settle litigation, and conclude litigation *before the EEOC has acted at all*. *See* 29 U.S.C. § 626(d)(1). These features render the ADEA's limitations provisions distinguishable from the one at issue in *Anderson*, which broadly applied and commanded that actions "shall be commenced" within four years. *See* Mass. Gen. Laws Ch. 260, § 5A.

In addition, unlike the agreement in *Anderson*, the Timeliness Provision did not actually shorten the statutory period. It *adopts* the ADEA's limitations period for the filing of an EEOC charge. *See supra* pp. 6-8. Rumsey's suggestion that the Timeliness Provision will always yield

a deadline that is shorter than the limitations period is just wrong. For example, if the EEOC issues a right to sue letter within 120 days, the 90-day limitation period would expire in 220 days.

Rumsey wrongly attempts to "plead around" *Anderson*'s distinguishable holding by alleging (Doc No. 22, ⁋⁋ 109-114) his reading of it as fact. The Court should not credit these legal arguments as true, *see supra* pp. 8-11. In all events, contrary to Rumsey's "allegation" (*id.* ⁋ 109), IBM is *not* arguing that the Timeliness Provision was a "notice requirement." The Timeliness Provision established a timeliness requirement that was *satisfied* (by its terms) by a demand notice.

Rumsey also badly mischaracterizes several First Circuit decisions, wrongly citing random details that were irrelevant to the Court's analysis as holdings (*id.* ⁋⁋ 110-114). For example, Rumsey claims that *Anderson* rejected IBM's interpretation of "civil action" because the term "action" in the state limitations period at issue in that case was purportedly broadly defined. But the parties did not brief, and the First Circuit *nowhere* discussed or considered, the meaning of the state-statutory term "action"; likewise contrary to Rumsey's claim, the court *nowhere* considered whether the plaintiff had a substantive right to seek agency action, which is presumably why Rumsey fails to provide citations for either of these supposed holdings (*see* Doc. No. 22, ⁋ 110, ⁋ 113, ⁋ 114). In all events, as Rumsey concedes, the state law in *Anderson* is different from the ADEA, rendering these faux holdings distinguishable (*see id.* ⁋⁋ 112, 113).

In addition, the Timeliness Provision's 300-day requirement is no more difficult to satisfy than, or in conflict with, the ADEA's 300-day charge requirement. Doc No. 22, ⁋⁋ 24, 47, 48, 118-124. The arbitration agreement expressly provides that the arbitration demand is an email or letter to IBM that merely "set[s] forth the dispute" (Doc. No. 22 ⁋ 41)—"the alleged act or omission at issue and the names of all persons allegedly involved." Doc. No. 22-2, at 5. That is precisely what the EEOC requires in a charge: "A short description of the actions you believe

were discriminatory"; "When the discriminatory actions took place"; "Why you believe you were discriminated against." *See* https://www.eeoc.gov/how-file-charge-employment-discrimination (last visited Dec. 23, 2024).[7]   And Congress has determined that plaintiffs can reasonably be expected to know these facts and take action within 300 days of the alleged discriminatory act. *See* 29 U.S.C. § 626(d).   Accordingly, there is no relevant difference between the ADEA's exhaustion requirement and the Timeliness Provision—let alone some kind of conflict.

Any conflict, moreover, would be waivable.   In *Anderson*, Massachusetts precedent precluded waiver of the state limitations period.  *See* 500 F.3d at 76-77.  The U.S. Supreme Court and the First Circuit, in contrast, have made clear that only substantive rights in the ADEA, which the ADEA's limitations period is not, are non-waivable.  *See 14 Penn Plaza*, 556 U.S. at 259; *Rosenberg*, 170 F.3d at 11; *see also Estle*, 23 F.4th at 213-14.[8]

### 3.    The Timeliness Provision does not interfere with Rumsey's participation in the EEOC process.

Rumsey's third argument—that adherence to the Timeliness Provision would have interfered with his right to participate in the EEOC's investigation, Doc No. 22, ¶¶ 99, 104, 126, 138, 141—is counterfactual and legally baseless.  The Agreement expressly provides that "Your agreement to arbitrate certain claims pursuant to this Agreement shall *not* prohibit you from filing a charge or complaint with . . . the [EEOC]."  Doc No. 22-2 at 3 (emphasis added); *see also id.* at

---

[7]   *See also* JAMS, Employment Demand for Arbitration Form, available at https://jamsdenver.com/wp-content/uploads/2023/10/JAMSArbDemand.pdf (last visited Dec. 9, 2024); EEOC, Charge of Discrimination (Form 5) (June 2022), available at www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5.pdf.

[8]   Finally, while this Court need not decide the issue to resolve this Motion, IBM respectfully submits that the effective-vindication test articulated in *Anderson* is inaccurate in light of *Italian Colors*, 570 U.S. at 236-37.   In *Anderson*, the First Circuit suggested that effective vindication is precluded by mere conflict between a statutory limitations period and an arbitration agreement.  *See* 500 F.3d at 72-73, 75.  In *Italian Colors*, the U.S. Supreme Court cast doubt on the effective vindication doctrine and made clear that it is implicated, if ever, only when it is "impossible" for parties to pursue their statutory rights.  570 U.S. at 236-37 & n.3.  It was not impossible for Rumsey to pursue his ADEA claim in arbitration.  That should end the inquiry.

2 ("By accepting this Agreement, you do *not* release . . . your right to file a charge with or participate in any investigation or proceeding conducted by the [EEOC].") (emphasis added).  And Rumsey retained the right to comply with any lawful subpoena.  *Id.* at 2.  Thus, as Rumsey admits (Doc No. 22, ⁋ 9) he *did* file an EEOC charge.

These facts render Rumsey's reliance (Doc No. 22, ⁋ 125) on *EEOC v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir. 1996), misplaced.  There, the relevant agreement *prohibited* cooperation with the EEOC.  *See id.* at 745.  *Astra* is "inapposite" where, as here, "the clauses at issue explicitly allow the signatories to cooperate with agency investigations and to provide information pursuant to subpoenas or court orders."  *Alston v. Town of Brookline*, 997 F.3d 23, 51 (1st Cir. 2021).

But while Rumsey was free to file a charge and aid the EEOC's investigation, his doing so did not relieve him of his obligations under the Timeliness Provision.  It states that the "filing of a charge or complaint with a government agency . . . shall not . . . extend the time for submitting a demand for arbitration."  Doc No. 22-2 at 5.  Nothing in *Astra* suggests that this contractual obligation—which is entirely separate from the EEOC's investigatory process—is invalid.

Finally, Rumsey has no "substantive right" to participate in the EEOC's investigatory process.  Again, the Supreme Court has held that the substantive right protected by the ADEA is only "the statutory right to be free from workplace age discrimination."  *Penn Plaza*, 556 U.S. at 265.  The investigatory process is the EEOC's own enforcement authority, not an individual right.  *See Astra*, 94 F.3d at 744.  Thus, no court has held that the EEOC's failure to conduct a proper investigation, extensive discovery, or a conciliation process violates a party's rights or gives rise to a cause of action.  In fact, the First Circuit has rejected this argument.  *See Francis-Sobel v. Univ. of Maine*, 597 F.2d 15, 18 (1st Cir. 1979); *Johnson v. Rodriguez*, 943 F.2d 104, 108-09 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992).  And, "the mere involvement of an administrative

agency in the enforcement of a statute is not sufficient to preclude arbitration." *Gilmer*, 500 U.S. at 28-29. Accordingly, Rumsey has no "substantive right" to the EEOC's investigatory process.

Rumsey's alternative claim that the Timeliness Provision unlawfully precluded him from enjoying his purported right to "the benefits of [the] completed EEOC investigation"—*i.e.*, the investigation's spoils, which Rumsey alleges are broader than the spoils of ordinary discovery— fares no better. Doc No. 22, ⁋⁋ 16, 50-51, 56-57, 99. The U.S. Supreme Court and the First Circuit have both squarely rejected the argument that an arbitration agreement's effect of limiting discovery implicates any substantive right. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 42 (1st Cir. 2006) (citing *Gilmer*, 500 U.S. at 31).

In addition, nothing in the Timeliness Provision precluded IBM and Rumsey from agreeing to stay arbitration until after the EEOC investigation concluded. S*ee* Doc No. 22-2 at 5. That Rumsey "did not know a stay of an arbitration was possible" and was unrepresented is not an indictment of the Timeliness Provision but of Rumsey's own choices. Doc No. 22, ⁋⁋ 52, 56. The Arbitration Agreement explicitly advised Rumsey to consult with an attorney (Doc No. 22-2 at 2-3). In addition, Rumsey's "information and belief" assertion (Doc No. 22. ⁋⁋ 54-55), that IBM would not have agreed to a stay is baseless speculation that cannot be credited. IBM and Rumsey, in fact, entered into a stay agreement after Rumsey submitted his untimely demand *that is still in place today*. *See* Doc No. 22, ⁋ 90. Having failed to ask for a stay earlier, Rumsey should not be allowed to engage in pure (counter-factual) surmise about what might have happened had he acted more promptly. In all events, the arbitrator had the authority to issue a stay pending the EEOC's investigation; Rumsey simply did not ask for one. *Id.* Accordingly, nothing about the Arbitration Agreement prevented Rumsey from realizing the fruits of the EEOC's investigation; it was Rumsey's own failure to use the tools available to him under the Agreement.

Rumsey was also free to use the discovery process in his individual arbitration to seek any relevant evidence. *See In re Second Wave IBM Arb. Agreement Litig.*, No. 21-CV-09574, ECF No. 15 (S.D.N.Y. Dec. 14, 2021). While Rumsey, again, speculates that it may have been difficult for him to obtain "key evidence" in arbitration (Doc No. 22 ¶ 57), he never tried. In all events, the Supreme Court has squarely rejected Rumsey's argument that discovery in arbitration is "insufficient to allow ADEA claimants . . . a fair opportunity to present their claims." *Gilmer*, 500 U.S. at 31. "Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* (citation omitted).

### 4. The Timeliness Provision does not interfere with the EEOC's investigatory process.

Rumsey's final suggestion, that the Timeliness Provision hinders the EEOC's investigatory power, is foreclosed by the Supreme Court's decision in *Gilmer*. There, the Court was "unpersuaded by the argument that arbitration will undermine the role of the EEOC in enforcing the ADEA." 500 U.S. at 28. Like IBM does here, the Court noted that an "individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action," noting that the plaintiff before it (like Rumsey) had "filed a charge with the EEOC." *Id.* The Court continued:

> In any event, the EEOC's role in combating age discrimination is *not* dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA "from any source," and it has independent authority to investigate age discrimination. *See* 29 CFR §§ 1626.4, 1626.13 (1990). Moreover, nothing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes. Such disputes can be settled, for example, without any EEOC involvement.

*Id.* (emphasis added).

In addition, the ADEA expressly authorizes chargers to file suit *before* the EEOC acts, *see*

29 U.S.C. § 626(d)(1), which demonstrates that Congress did not view the EEOC's internal investigations process as hindered by the resolution of individual claims.  And it is well settled that employers cannot, as a matter of law, stop an EEOC investigation or enforcement action via an arbitration agreement.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297–98 (2002); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15–16 (1st Cir. 2005).  The EEOC's investigatory process is thus expansive, well protected and unthreatened by parallel arbitration.

## II.    THE TIMELINESS PROVISION IS NOT UNCONSCIONABLE.

Rumsey's unconscionability claim (Doc No. 22, ¶¶ 151-53) fails as a matter of law.  *See Chandler*, 2022 WL 2473340, at *7-8.   "Under New York law," which governs this issue (Doc No. 22-2 at 3; Doc No. 22, ¶ 151, n.6), there must be a showing that the contract is "procedurally *and* substantially unconscionable."  *Chandler*, 2022 WL 2473340, at *7 (emphasis added).  "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract."  *Ragone*, 595 F.3d at 121-22 (citation omitted).  Rumsey's cannot satisfy either.

With respect to procedural unconscionability, Rumsey asserts (Doc No. 22, ¶ 152) that the Timeliness Provision was presented to him on a "take-it-or-leave-it" basis.  Under New York law, that "is not sufficient" for procedural unconscionability.  *Ragone*, 595 F.3d at 122.  In addition, the Agreement was part of a severance package, which is not the kind of take-it-or-leave-it condition of employment that can concern courts.  Doc No. 22, ¶ 37.  Similarly, Rumsey's legal assertion that the Agreement "lack[ed] mutuality" (Doc No. 22, ¶ 154) is erroneous because it was part of a severance package.  *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 451 (2d Cir. 1995); *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (observing that the Second Circuit and New York State Court of Appeals have enforced arbitration clauses where only one party could trigger arbitration, "rejecting the notion that mutuality is required.").

Rumsey's allegation that the Timeliness Provision was "confusing" to him and that he misunderstood it (Doc No. 22 ¶ 152) is legally insufficient to demonstrate procedural unconscionability.  *See Dumanis v. Citibank (S. Dakota), N.A.*, 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007) (holding that subjective interpretation irrelevant).  The assertion also cannot be squared with the numerous decisions interpreting the Timeliness Provision in the exact same way—as mirroring the ADEA's charge filing requirement—and finding its language unambiguous and clear. *See supra* n.2.  In addition, the Agreement informed Rumsey in bold, "**You can take up to 30 days before accepting this agreement,**" and provided in all-caps: "YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT."  Doc No. 22-2 at 2-3.  By signing, Rumsey "acknowledge[d] that [he had] been provided adequate time to consult with a lawyer or other advisor of [his] own choosing before entering into" the Agreement.  *Id.* at 3.  These provisions prove that "there is no indication that the circumstances surrounding the execution of the Agreement were coercive or that the plaintiff 'lacked a meaningful choice' to enter into the Agreement."  *Chandler*, 2022 WL 2473340 at *7 (citation omitted).  Thus, applying New York law to effectively the same arbitration agreement, the Southern District of New York and Second Circuit have held that it is not procedurally unconscionable.  *Id.*

As to Rumsey's substantive unconscionability claim (Doc No. 22, ¶ 153), it fails because the Timeliness Provision did not preclude Rumsey's participation in the EEOC process.  *See supra* pp. 13-15.  Rumsey's supposedly contrary support (Doc No. 22, ¶¶ 115, 153) are California cases applying California unconscionability law.  *See Ronderos*, 114 F.4th at 1095; *Ramirez*, 16 Cal. 5th at 478; *MacClelland*, 609 F. Supp. 3d at 1035.  But the ADEA expressly allows parties to litigate before the EEOC acts, and in *Gilmer*, the Supreme Court held that the EEOC's role could not

preclude arbitration.  *See supra* pp. 5, 12.  In addition, unlike the California courts, the New York courts routinely find "[t]he contractual shortening of the statute of limitations for . . . claims under the New York City and New York State Human Rights Law" to be "inherently reasonable."  *See Curtis v. Marino*, 201 A.D.3d 584, 585 (N.Y. App. Div. 2022) (quoting *Ortegas v. G4S Secure Sols. (USA) Inc.*, 156 A.D.3d 580, 580 (N.Y. App. Div. 2017 (six months)); *see also 159 MP Corp. v. Redbridge Bedford, LLC*, 160 A.D.3d 176, 187 (N.Y. App. Div. 2018) (collecting cases).

## III.    A VALID AGREEMENT WAS FORMED.

Rumsey's final claim—that no agreement was formed (Doc No. 22, ¶¶ 155-165)—also fails.  "Striking down a contract as indefinite and in essence meaningless 'is at best a last resort.'" *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991).  The "[i]ndefiniteness must reach the point where construction becomes futile." *Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc.*, 232 N.Y. 112, 114 (1921).  But every federal court has construed the Timeliness Provision in the same way.  *See supra* n.2.[9]  For good reason.  The provision (Doc No. 22-2 at 5) contemplates two different demand deadlines—one for claims filed directly in court, and one for claims (like ADEA claims) that require administrative exhaustion. For both to have meaning, the first must refer to the court-filing deadline and the second to the exhaustion deadline.  *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003). Additionally, the use of "such" in the second clause plainly refers to a claim that "must first be brought before a government agency," and "the deadline for filing such a claim" to the agency's filing deadline—i.e., 300 days.  Doc No. 22-2 at 5.

---

[9] Contrary to Rumsey's allegations (Dkt. No. 22, ¶¶ 147-148), the courts considering Rumsey's formation argument have rejected it.  *See* Dkt. No. 22, ¶ 149; *Owens v. IBM*, No. 22-cv-00901, ECF No. 4-3, Ex. 13 at 5, 9-10 (D.D.C. Apr. 4, 2022); *id.* Dkt. 28 (D.D.C. Dec. 9, 2022); *McNeill v. IBM*, 1:22-cv-02378, Dkt. No. 4-3, Ex. 13 at 17-18 (D.D.C. Nov. 23, 2023); *McNeill v. IBM*, 2023 WL 7214668, at *1 (D.D.C. Nov. 2, 2023).

Rumsey's legal conclusion that the second deadline could refer to the court-filing deadline would make the limitations period non-existent or entirely indefinite when a party does not file an EEOC charge—which happens often because the Agreement does not require a charge filing.  Doc No. 22-2 at 5.  Rumsey's construction would thus lead to the impermissibly absurd result that non-charge plaintiffs could have no ADEA limitations period, even though the Agreement *includes a limitations period.  See In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 561 (Appl. Div. 1st Dep't 2003).  Rumsey's support for this argument, moreover, is distinguishable (Doc No. 22, ¶ 163). The underlying agreements in those cases did not specify a separate limitations periods for claims that must be administratively exhausted.  *See Anthony v. Affiliated Comput. Servs.*, 621 F. App'x 49, 52 (2d Cir. 2015); *Hagan v. Katz Commc'ns, Inc.*, 200 F. Supp. 3d 435, 444 (S.D.N.Y. 2016).

In all events, whether the Timeliness Provision is ambiguous is an issue for the Arbitrator. *See* Doc No. 22-2 at 5 (incorporating JAMS Employment Arbitration Rules); JAMS Employment Arb. R. 11(b).  Mere ambiguities do not make a contractual provision so meaningless as to preclude contract formation.  *See, e.g., Fowler v. Boise Cascade Corp*., 948 F.2d 49, 54 (1st Cir. 1991) ("[T]he interpretation of a contract with ambiguous provisions is a matter for the factfinder.").

Finally, Rumsey' reliance on OWBPA (Doc No. 22, ¶ 165) is misplaced, as it applies only to waivers of substantive rights (*supra* p. 11).  The OWBPA "adds nothing" here. *In re IBM Arb.,* 2022 WL 2752618, at *8.

## CONCLUSION

For these reasons, the Court should grant IBM's motion to dismiss under Rule 12(b)(6).

Dated:  January 6, 2025

Respectfully submitted,
*/s/ Traci L. Lovitt*
Bar No. 680619
tlovitt@jonesday.com

**JONES DAY**
100 High Street, 21st Floor
Boston, MA 02110-1781
Telephone: 617.960.3939
Facsimile: 617.449.6999

and

Patrick M. Corley (*Pro Hac Vice*)
pcorley@jonesday.com
**JONES DAY**
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
Telephone: 404.581.3939
Facsimile: 404.581.8330

*Attorneys for Defendant International*
*Business Machines Corporation*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(a)(2) I hereby certify that I conferred with counsel for Plaintiff on January 5, 2025 about the foregoing motion to dismiss the First Amended Complaint for Declaratory and Injunctive Relief.

I further certify that the foregoing contains 20 pages, per Honorable Judge Angel Kelley's order that the brief be no longer than 20 pages. *See* Standing Order Regarding Motion Practice, Doc. No. 6.

Dated:  January 6, 2025                          */s/ Traci L. Lovitt*
                                                          Traci L. Lovitt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2025, a true copy of the foregoing document filed through the ECF system will be electronically sent to all counsel of record.

Dated:  January 6, 2025                                  _/s/ Traci L. Lovitt_____
                                                                     Traci L. Lovitt