**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL W. RUMSEY,

                  Plaintiff,

        v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                  Defendant.

No. 1:24-cv-12187-AK

Leave to file this opposition of 25 pages
granted on January 31, 2025

**PLAINTIFF'S OPPOSITION TO**
**IBM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

In 1991, Congress amended the ADEA to replace its fixed-length statute of limitations with an unusually specialized deadline. This new statute of limitations conformed with Title VII's deadline of "90 days after" the EEOC fully completes its pre-suit proceedings and issues its written notice of right to sue. 29 U.S.C. § 626(e). In short, Congress customized the ADEA's statute of limitations by tethering it to the completion of the EEOC's work on the case. And it thereby guaranteed the right of employees under the ADEA to the full benefits of the EEOC's statutorily prescribed pre-suit functions—including powerful tools for investigation, the issuance of administrative findings, and conciliation efforts—90 days **before** deciding whether to pursue an adversarial claim for relief in a binding forum.

Here, the EEOC conducted an in-depth investigation of the age discrimination charges of Mr. Rumsey and 61 other older IBM employees who were terminated in group layoffs. In September 2020, the EEOC issued its determination: from 2013 until at least 2018, IBM laid off tens of thousands of older workers in a nationwide, systematic, "top-down" scheme devised by IBM's "highest ranks" to replace its older workers with younger workers in violation of the ADEA. The EEOC explained that it had collected and analyzed data showing that IBM's layoffs between 2013 and 2018 "had an adverse impact" on older employees and that IBM targeted "primarily older workers (85.85%) in the total potential pool of those considered for layoff." The supporting evidence also included "corroborating testimony from dozens of witnesses nationwide." Mr. Rumsey could not have obtained this key evidence of age discrimination on his own, especially because in 2014 IBM ended its longstanding practice of providing employees age 40 or older who were chosen for layoffs with comparator information that would reveal whether older workers were disproportionately selected for termination.

After its finding of premeditated, corporate-wide age discrimination by IBM, the EEOC engaged in statutorily mandated conciliation efforts with IBM and terminated employees, including Mr. Rumsey. When Mr. Rumsey was unable to secure an acceptable conciliation agreement, the EEOC issued a notice of right to sue, and *within 90 days* of that notice, he filed an individual arbitration demand with IBM.

IBM responded to Mr. Rumsey's arbitration demand by claiming it was too late and should have been filed over four years earlier. Its untimeliness defense, however, depends on false premises. **First**, IBM erroneously contends that the ADEA's 90-day statute of limitations is waivable through its arbitration agreement, and its purported 300-day filing deadline does not prevent the effective vindication of Mr. Rumsey's statutory rights under the ADEA. **Second**, it must also show that its "Time Limits" provision provided clear notice that it waived the ADEA's 90-day statute of limitations, and that Mr. Rumsey and IBM had a meeting of the minds agreeing to a 300-day deadline. Unless IBM is right about all these key points, the ADEA's statute of limitations must govern Mr. Rumsey's ADEA claim in arbitration. And IBM is wrong in all respects.

**First**, IBM's argument that the ADEA's statute of limitations is waivable runs smack into a directly contrary First Circuit precedent, *Anderson v. Comcast*, 500 F.3d 66 (1st Cir. 2007), holding that a statute of limitations in a consumer protection statute was **not** waivable in an arbitration agreement. *Id*. at 76-77. Relying largely on the amendments that lengthened the statute of limitations and the "statutory language emphasizing the centrality of consumer protection," the First Circuit concluded that shortening the limitations period by contract would undermine the legislative determination "that a longer statute of limitations was required to allow [plaintiffs] to effectuate their private cause of action under [the statute]" at issue. *Id*.

The analytical approach taken by *Anderson*—focusing on the standard tools of statutory interpretation to decide whether a particular statute of limitations is waivable—was followed by the Sixth Circuit when it held that the ADEA's limitations period is not waivable. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021). The court in *Thompson* explained that the ADEA's statutory structure "emphasizes the importance of the pre-suit cooperative process" at the EEOC, and allowing employers to alter the ADEA's "self-contained limitations period" would "remov[e] the incentive of employers to cooperate with the EEOC, and encourage[] litigation that gives short shrift to pre-suit investigation and potential resolution of disputes through the EEOC." *Id.* at 519, 521. Because the ADEA's statute of limitations is a key pillar that supports the statute's overall anti-discrimination mandate, it is a substantive right that cannot be waived. *Id.* at 521.

Reaching the same result here as in *Anderson* is also supported by the longstanding rule that "courts will invalidate [arbitration] provisions that prevent parties from effectively vindicating their statutory rights."[1] As this case illustrates, a worker's statutory right to participate in the EEOC process before filing suit serves an essential role in enforcement of the ADEA: it gives workers key evidence of age discrimination that likely would otherwise be unavailable—here, the critical comparator information that IBM refused to give to Mr. Rumsey when it terminated him—as well as a possible finding of discrimination by the EEOC that may be admissible in a future court action or arbitration and access to the EEOC's settlement process. Doc No. 22, ¶ 133. Forcing Mr. Rumsey to file a complaint *before* he had a chance to fully participate in and benefit from the EEOC process would severely limit his ability to vindicate his rights under the ADEA. Even if the ADEA's statute of limitations may be waived in some circumstances, IBM's effort to impose a 300-day deadline violates the effective vindication doctrine.

---

[1] *Cedeno v. Sasson*, 100 F.4th 386, 395 (2d Cir. 2024) (citing multiple Supreme Court decisions), *cert. denied sub nom. Argent Tr. Co. v. Cedeno*, No. 24-392, 2024 WL 4655015 (U.S. Nov. 4, 2024).

And the Supreme Court has rejected IBM's theory[2] that filing a charge of discrimination pro se with the EEOC is the equivalent of filing and prosecuting an adversarial claim for relief in a binding forum. Unlike the EEOC process, IBM's arbitration process requires payment of a filing fee and compliance with the Federal Rules of Evidence, and it results in a binding decision that is enforceable in court. *See* Doc No. 22, ¶¶ 41-51. So Mr. Rumsey's ability to file an EEOC charge within 300 days does not mean that he could have just as easily filed his ADEA claim in arbitration by that same deadline.

In attempting to distinguish *Anderson*, IBM starts with the grand assertion that the ADEA's "timeliness provisions do not apply to arbitration." Doc No. 27 at 11. But it cites no cases supporting its far-fetched premise that statutes of limitations do not apply to arbitration unless they explicitly reference arbitration, and the statute of limitations in *Anderson* made no reference to arbitration either. Because the considerations that led the court in *Anderson* to conclude that the statute of limitations in that case was not waivable are just as applicable here, IBM's purported 300-day limitations period must be severed so "arbitration can go forward." 500 F.3d at 77.

**Second**, even if the ADEA's statute of limitations can be waived, IBM's arbitration agreement neither provided the clear notice required under New York law for such a waiver to be enforceable nor did it meet the basic standard of clarity required for the formation of an agreement altering the filing deadline. Indeed, Mr. Rumsey reasonably interpreted the agreement as adopting and *not* waiving the ADEA's statute of limitations for several reasons. For example, it states twice that the deadline for filing in arbitration is the same as the "deadline" for filing a "claim" under the law applicable to that claim; it refers to "a charge or complaint with a government agency" but only uses the term "claim" when defining the filing deadline, which Mr. Rumsey reasonably read

---

[2] *See, e.g.*, Doc No. 27 at 7 (arguing that "Rumsey *affirmatively disproved* his effective vindication argument by filing an EEOC charge within that period") (emphasis in original)).

as referring to filing a claim in court. Because Mr. Rumsey's interpretation of the arbitration deadline as the ADEA's 90-day statute of limitations was reasonable, he not only lacked clear notice of any waiver, he also had no meeting of the minds with IBM on the meaning of the provision, and thus no contract formed regarding that term.

## FACTS

As part of its systematic termination of tens of thousands of older workers in violation of the ADEA, IBM laid off Michael Rumsey on May 31, 2016. Doc No. 22, ¶¶ 4, 9. When notified of his termination, Mr. Rumsey should have received comparator information from IBM— including the ages and job titles of other employees in the affected job units and whether they were chosen for layoff—so he could evaluate whether the layoff targeted older workers. *Id*. ¶ 6. IBM refused to provide that information even though the ADEA required it to do so to obtain a valid waiver of "any right or claim" under the ADEA. *Id*. ¶¶ 6, 23, 80-81, 120. Facing a sudden termination, needing money, and proceeding without a lawyer, Mr. Rumsey reluctantly signed a Separation Agreement with IBM in exchange for payment equal to one month's salary and three months' continued health and life insurance benefits. *Id.* ¶¶ 38-39, 52.

After Mr. Rumsey filed a timely charge of discrimination in July 2016, the EEOC conducted an extensive investigation into Mr. Rumsey's complaints and those of 61 other IBM employees. *Id.* ¶¶ 9-10. The EEOC investigation identified a "top-down" scheme from IBM's "highest ranks" to replace older workers from at least 2013 to 2018. *Id.* ¶¶ 4, 60; Doc No. 22-1 at 2. The EEOC found reasonable cause to believe that IBM engaged in age discrimination, citing testimony from dozens of witnesses across the country and concluding that IBM's purported

reasoning did "not withstand scrutiny."[3] Doc No. 22, ¶¶ 4, 10, 58; Doc No. 22-1 at 2. After its determination for Mr. Rumsey, the EEOC engaged in conciliation efforts—mandated by statute—to try to resolve his claims against IBM. Doc No. 22, ¶ 12. Mr. Rumsey was unable to secure an acceptable conciliation agreement with IBM, and the EEOC issued him a right-to-sue notice on August 27, 2021. *Id.* ¶ 13. Within 90 days of that notice, Mr. Rumsey filed an individual arbitration demand with IBM on November 23, 2021. *Id.* ¶ 13.

When faced with Mr. Rumsey's arbitration demand, IBM took the position that it was untimely, based on the following "Time Limits" provision in the Separation Agreement:

> **Time Limits and Procedure for Initiating Arbitration**
> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

Doc No. 22-2 at 5.

IBM claimed that this language in its Separation Agreement imposes a 300-day deadline for Mr. Rumsey's arbitration demand, meaning Mr. Rumsey was required to file his ADEA claims in arbitration by December 2016, more than four years before the completion of the EEOC proceedings and the ADEA's statutory filing deadline. Doc No. 22, ¶¶ 3, 15, 100. Mr. Rumsey

---

[3] The EEOC's September 2020 finding of systemic age discrimination by IBM was reinforced by disclosures in public court filings of internal emails and documents in which IBM's highest executives exchanged negative stereotypes about older employees and discussed the company's sweeping efforts to replace them with younger workers, referred to as "early professionals," so as "to correct the seniority mix." Doc No. 22, ¶ 72. For example, a high-level IBM executive candidly described a plan to "accelerate change" at IBM "by inviting the 'dinobabies' (new species) to leave" and to make them an "[e]xtinct species." *Id.* ¶ 68. Similarly, a top executive referenced the company's "dated maternal workforce" and said that it "must change" because they are a "real threat for us." *Id.*

brought this action to have IBM's purported 300-day filing deadline declared invalid so that he can proceed with the arbitration of his ADEA claim. He is **not** seeking to avoid arbitration.

**STANDARD OF REVIEW**

In deciding IBM's motion to dismiss, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible" or "'actual proof of those facts is improbable.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The First Circuit has also emphasized the requirement to "draw all reasonable inferences in favor of the plaintiff." *N.R. by & through S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022).[4]

IBM's motion repeatedly violates these fundamental rules. For example, IBM argues that its alleged 300-day requirement to demand arbitration "is no more difficult to satisfy than . . . the ADEA's 300-day charge requirement."[5] IBM makes this factual claim a mainstay of its brief even though the First Amended Complaint (the "FAC") details numerous non-conclusory facts showing that it would in fact be more difficult for Mr. Rumsey and other workers to satisfy the arbitration demand requirement. As the FAC alleges, arbitration under IBM's agreement required Mr. Rumsey to pay a filing fee, prove his case under the Federal Rules of Evidence without the assistance of a completed EEOC investigation, and be bound by a binding decision. Doc No. 22, ¶¶ 41-51. Rather than address these key facts, IBM ignores them and instead repeatedly taunts Mr. Rumsey,

---

[4] IBM's Agreement unequivocally requires that all issues of the validity or enforceability of the alleged 300-day deadline is for a court and not an arbitrator to decide: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction." Doc No. 22, ¶ 34; Doc No. 22-2 at 3.

[5] Doc No. 27 at 12; *see also id*. at 13 ("Accordingly, there is no relevant difference between the ADEA's exhaustion requirement and the Timeliness Provision—let alone some kind of conflict.").

asserting that "Rumsey's own inaction is solely to blame" and his "failure to file a timely arbitration demand is due entirely to his inaction." Doc No. 27 at 2, 7.

IBM similarly breaks the fundamental rules governing motions to dismiss when it argues that Mr. Rumsey's "information and belief" assertion that IBM would not have agreed to stay arbitration in December 2016 until after the EEOC process ended in August 2021 "is baseless speculation that cannot be credited." Doc No. 27 at 15. But these allegations are non-conclusory and, in any event, the FAC details numerous other facts showing IBM's scorched-earth approach to circumventing its workers' rights under the ADEA which further support the reasonable inference that IBM would never agree to a four-year stay so an employee could gain the benefits of the EEOC process. For example, IBM tried to cover up its corporate scheme to lay off older workers by ending its longstanding practice of providing them with comparator information; it flouted its discovery obligations in a court case challenging its layoffs targeting older workers; and the EEOC determined that IBM implemented a five-year, systematic, "top-down" scheme devised by its "highest ranks" to replace its older workers with younger workers and then gave false explanations to the EEOC. Doc No. 22, ¶¶ 4-7, 53-57. The Court should thus credit the non-conclusory allegations in the FAC (and the reasonable inferences based on those allegations) that IBM would not have agreed to a stay of arbitration in December 2016 lasting until the EEOC completed its investigation and conciliation efforts in August 2021.[6]

## ARGUMENT

## I.  The ADEA's Limitations Period Cannot Be Contractually Waived, and IBM's Purported 300-Day Filing Deadline Is Also Invalid Under The Effective Vindication Doctrine.

### A.  Under the First Circuit's decision in *Anderson*, the ADEA's statute of limitations cannot be waived by an arbitration agreement.

---

[6] IBM only agreed to a stay with Mr. Rumsey in 2022 because that stay allowed it to preserve its defense that his arbitration demand was already untimely.

In *Anderson*, the First Circuit severed a one-year deadline in an arbitration agreement because it conflicted with a statute that provided a four-year statute of limitations for the plaintiff's consumer protection claims. 500 F.3d at 77. The *Anderson* Court emphasized several factors that made the limitations period non-waivable, factors that apply with even greater force to Mr. Rumsey's employee protection claims under the ADEA.

As a threshold matter, the First Circuit explained that "a statute of limitations often determines whether the consumer can seek any remedy at all. If that statute of limitations can be reduced from four years to one by agreement, the consumer loses a protection that is basic to all other consumer remedies." *Id.* Here, IBM's shortened deadline would have the same draconian effect of depriving Mr. Rumsey (and many other former employees) of the basic statutory right to "seek any remedy at all." Next, the First Circuit emphasized that the legislature had accorded importance to the four-year statute of limitations by specifically amending the law to lengthen the statute of limitations from two to three, and then to four years. *Id.* at 76-77. Likewise, Congress specifically amended the statute of limitations in the ADEA to ensure that workers could wait until after the EEOC completed its essential investigation and conciliation process before filing suit.

Finally, *Anderson* found significant that the four-year statute of limitations was in the context of "statutory language emphasizing the centrality of consumer protection" and was "part of a broader legislative scheme to remedy the imbalance which exists primarily because of a lack of parity in bargaining power between the consumer and the provider of consumer goods and services." *Id.* at 76 (cleaned up). Here, too, the statutory language of the ADEA emphasizes the centrality of protecting "older workers [who] find themselves disadvantaged in their efforts to

retain employment" by "arbitrary discrimination in employment because of age." 29 U.S.C. § 621(a).[7]

Further, the analysis and holding in *Anderson* directly contradict IBM's theory that the ADEA's limitations period does not apply in arbitration because the statute does not mention arbitration specifically. In *Anderson*, the statute of limitations applied to civil "actions" in court and did not expressly apply to arbitration proceedings, yet the court still held it could not be waived in an arbitration agreement. Obviously, *Anderson* did not accept IBM's novel view that, unless the parties specify a statute of limitations or an applicable statute mentions arbitration, there is no deadline at all for filing a complaint in arbitration.[8] Further, IBM never confronts a fatal flaw in its argument that the ADEA's "timeliness provisions do not apply to arbitration." Doc No. 27 at 11. Unlike in *Anderson*, IBM's arbitration agreement nowhere states an independent filing deadline but instead relies solely on adopting "the statute of limitations (deadline for filing) **that the law prescribes** for the claim that you are making, or, if the claim is one which must first be brought before a government agency, no later than **the deadline** for the filing of such a claim." Doc No. 22-2 at 5 (emphasis added). IBM reads this convoluted language to adopt the ADEA's 300-day deadline for filing a charge with the EEOC. But IBM cannot have it both ways: it cannot both adopt a 300-day statute of limitations from the ADEA and separately assert that the ADEA's "timeliness provisions do not apply to arbitration."

---

[7] The First Circuit's focus on the statutory language is entirely consistent with the Supreme Court's recognition "that some statutes of limitations do not permit parties to choose a shorter period by contract." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013). The legal test for "whether to enforce the terms of a contractual limitations provision" depends on whether there is "a controlling statute to the contrary." *Id.* at 106-07 (cleaned up).

[8] *See also Trout v. Univ. of Cincinnati Med. Ctr., LLC*, No. 1:22-CV-36, 2024 WL 3622834, at *7 (S.D. Ohio Aug. 1, 2024) (holding statute of limitations in FMLA, which applies to a "civil action" defined as "[a]n action . . . in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a), trumps time limit in arbitration agreement).

*Anderson* also undermines IBM's argument that, because the ADEA allows a worker to file suit before the 90-day deadline begins to run, that statutory limitations period is unimportant and thus can be waived. In *Anderson*, the applicable statute allowed plaintiffs to pursue litigation at any time within four years of the alleged violation of their consumer rights. But the option of plaintiffs to file early did not, in the view of the First Circuit, change the importance of the statutory right for consumers to have up to four years to file suit. Similarly, the ADEA's statute of limitations permits workers to file suit any time after 60 days elapsed from filing a charge with the EEOC. *See* 29 U.S.C. § 626(d)(1). Under basic logic and *Anderson*, Congress's decision to give workers the option of early filing under the ADEA does not in any way undermine its guarantee of the option of the longer 90-day statute of limitations after the completion of the EEOC investigation and conciliation process.

And *Anderson* also undercuts IBM's odd theory that it is okay for arbitration agreements to waive and shorten the statute of limitations in the ADEA because the workers can always ask their employer or the arbitrator to stay the arbitration pending the completion of the EEOC process. Doc No. 27 at 8, 15. That same theoretical largess could have been cited as a mitigating factor in *Anderson*, but the First Circuit rightly ignored that possibility because it would leave the statutory rights of workers to the whim of their employers.

**B. As the Sixth Circuit held in *Thompson*, the ADEA's limitations period gives rise to "substantive, non-waivable rights" that cannot be altered by contract.**

In *Thompson*, the Sixth Circuit carefully analyzed the text of the ADEA and concluded that the ADEA's statute of limitations is a non-waivable substantive right because it guarantees workers the right to wait to file suit until the completion of the EEOC process, which plays an important role in effectuating the statutory right of workers to be free from age discrimination. *Thompson,* 985 F.3d at 521. The court reasoned that, like Title VII, "the ADEA emphasizes the importance of

the pre-suit cooperative process." *Id.* By tailoring the statutory limitations period to the EEOC process, "Congress chose cooperation and voluntary compliance" as the statute's preferred strategy, and it ensured the option of employees to hold off on filing suit while "the EEOC would have an opportunity to investigate individual charges of discrimination, to promote voluntary compliance." *Id.* at 519, 521 (cleaned up). On the other hand, "[a]ltering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." *Id.* at 521.[9] Thus, the Sixth Circuit concluded that the ADEA's limitations period could not be waived, and a six-month contractual filing deadline was unenforceable. *Id.* Like the contract provision struck down in *Thompson*, IBM's alleged 300-day deadline waives the ADEA's detailed and intentional time limitations and thus cannot be enforced.

*Thompson* also relied on the Older Workers Benefit Protection Act (OWBPA) amendments to the ADEA, which prohibit altogether the prospective waiver of any right under the ADEA and impose strict requirements for waiver of any existing right under the ADEA, with heightened protections for employees laid off as a group. 29 U.S.C. § 626(f). The Sixth Circuit concluded that the OWBPA "further supports the conclusion that, as a substantive right, its self-contained limitation period may not be prospectively waived." 985 F.3d at 521.[10]

*Thompson*'s analysis of the OWBPA applies equally to IBM's purported 300-day filing deadline, which violates the requirements of the OWBPA for the waiver of "any rights" under the

---

[9] This analysis in *Thompson* was directly supported by the amicus brief filed by the EEOC stating that the "ADEA's limitations period for filing suit is a nonwaivable, substantive right." EEOC Amicus Br. at 28, *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) (No. 20-3060), Doc No. 21; *see also Mabry v. W. & S. Life Ins. Co.*, 2005 WL 1167002, at *5 (M.D.N.C. Apr. 19, 2005) ("This administrative scheme was carefully crafted by Congress, and requiring a party to file suit before the EEOC has an opportunity to review a charge would undermine and contravene the Congressionally-created scheme.").

[10] As the Supreme Court has explained, "[t]he OWBPA sets up its own regime for assessing the effect of ADEA waivers, **separate and apart from contract law** . . . [and] creates a series of prerequisites for knowing and voluntary waivers." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) (emphasis added).

ADEA. This contractual deadline is invalid because (a) it seeks to limit the right of Mr. Rumsey and other laid-off workers to have the benefit of a future investigation, determination, and conciliation process by the EEOC before they must bring their claims under the ADEA and thus violates the absolute prohibition in the OWBPA on the waiver of "rights or claims that may arise after the date the waiver is executed," 29 U.S.C § 626(f)(1)(C); and (b) it violates other minimum requirements in the OWBPA for a valid waiver including that it be part of an agreement "that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate," 29 U.S.C § 626(f)(1)(A), and that it provide comparator information about the other employes chosen and not chosen for a group layoff, 29 U.S.C § 626(f)(1)(A).

IBM attempts to distinguish *Thompson* because it was "outside" the "arbitration context." Doc No. 27 at 15. But that argument cannot be squared with the Supreme Court's 2022 decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), which held that courts must enforce arbitration agreements in the same manner as any other contract: "The policy is to make 'arbitration agreements as enforceable as other contracts, **but not more so**.'" *Id.* at 418 (cleaned up) (emphasis added). Indeed, at least one court has held that, under *Morgan*, *Thompson*'s holding applies in the arbitration context. *See Trout v. Univ. of Cincinnati Med. Ctr., LLC*, No. 1:22-CV-36, 2024 WL 3622834, at *7 (S.D. Ohio Aug. 1, 2024). Moreover, the Supreme Court has made clear that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies" that appear in an arbitration agreement. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 & n.5 (2022).[11] Thus, *Thompson*'s holding that the ADEA's limitations period gives rise to substantive rights that cannot be waived does not change when the waiver at issue is in an

---

[11] *See also Cedeno,* 100 F.4th at 395 ("The Court also made it clear that the policy favoring enforcement of agreements *to arbitrate* does not automatically extend to enforcement of *any* provision within an arbitration agreement.") (citing *Viking River*).

arbitration agreement.[12]

IBM repeatedly defends its alleged 300-day deadline for demanding arbitration on the ground that the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28-29 (1991), rejected attempts to "preclude arbitration" by challenging specific rules in an arbitration agreement. Doc No. 27 at 15, 18. But here Mr. Rumsey is seeking to move ahead with arbitration, and it is IBM that is trying "to preclude arbitration." Doc No. 22, ¶ 26.

### C. IBM's purported 300-day filing deadline is also invalid because it prevents Mr. Rumsey from vindicating his rights under the ADEA.

The conclusion that that the ADEA's statute of limitations is unwaivable under *Anderson* and *Thompson* is further supported by the effective vindication doctrine, which is applied on a case-by-case basis. Under that principle, even if the ADEA's statute of limitations could be waived in some circumstances, the purported deadline of under a year in IBM's agreement cannot be enforced here because it would prevent Mr. Rumsey and other workers from vindicating their right under the ADEA to be free from age discrimination. The Supreme Court "has repeatedly recognized the general principle that provisions within an arbitration agreement that prevent a party from effectively vindicating statutory rights are not enforceable."[13] If a procedural provision

---

[12] IBM also misleadingly argues (Doc No. 27 at 9) that this Court should disregard *Thompson* because "the Sixth Circuit has held that limitations periods can be shortened in arbitration agreements," citing *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc). The Sixth Circuit, however, expressly rejected that broad reading of *Morrison* in its *Logan* decision: "*Morrison* simply rejected the argument the plaintiff made in that case that the inclusion of a contractual limitations period in an arbitration agreement "render[ed] the entire agreement [to arbitrate] unenforceable." *Trout,* 2024 WL 3622834, at *7 (quoting *Logan,* 939 F.3d at 837–38).

[13] *Cedeno*, 100 F.4th at 395 (applying the effective vindication doctrine to invalidate arbitration provision and citing *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235-36, 238 (2013); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); and three other decisions of the Supreme Court); *see also Parker v. Tenneco, Inc.*, 114 F.4th 786, 793 (6th Cir. 2024), *cert. denied*, No. 24-559, 2025 WL 76490 (U.S. Jan. 13, 2025) (joining *Cedeno* as the fifth circuit to "have struck down arbitration provisions that barred 'effective vindication' of the statutory rights guaranteed by ERISA); *Bekele v. Lyft, Inc.*, 918 F.3d 181, 189 (1st Cir. 2019) (describing *Green Tree Fin. Corp. v. Randolph* as "recognizing that 'large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum' and holding that such costs could render an arbitration agreement unenforceable as to those federal claims").

in an arbitration agreement[14] has the effect of "preclud[ing] a litigant from effectively vindicating her federal statutory rights," then it cannot be enforced, even if it is not itself substantive. *Id.* (quoting *Green Tree Finan. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)) (cleaned up).[15] Substantially shortening the statute of limitations here deprives Mr. Rumsey of his right under the ADEA to benefit from the EEOC's investigation before filing a claim for relief and thus severely harms his ability to effectively vindicate his age discrimination rights.

The California Supreme Court's recent decision in *Ramirez v. Charter Communications* underscores why significantly shortening the statute of limitations under an anti-discrimination statute providing potential victims with access to a pre-suit administrative investigation prevents the vindication of statutory rights and is thus invalid. 551 P.3d 520, 536 (Cal. 2024). There, the court unanimously invalidated a deadline in an employer's arbitration agreement because it "truncate[d] the period the Legislature has determined employees need to effectively vindicate their rights." *Id*. The court emphasized that the employer's shortened deadline could require employees to arbitrate their state statutory employment discrimination claims "before an administrative investigation can be conducted." *Id.* And the court further explained that the "involvement of the [state civil rights agency] serves an important function and may be helpful

---

[14] As the Supreme Court has noted, if "the choice-of-forum and choice-of-law clauses [in an arbitration agreement] operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).

[15] IBM wrongly contends that a footnote in the *Italian Colors* decision requires that access to the arbitrable forum must be "impossible" for the effective vindication doctrine to apply. Doc No. 27 at 13 n. 8 (quoting *Italian Colors*, 570 U.S. at 236 n.3). But that footnote merely noted that it was "assuming" that a clause prohibiting a party from presenting economic testimony would make "vindication of the claim impossible" and explained why that did not change its conclusion about the enforceability of class action waivers. The Supreme Court never stated that the effective vindication doctrine applies *only* if vindication is "impossible." To the contrary, in its textual discussion of the effective vindication exception, it cited as a possible example when high arbitration fees make "access to the forum **impracticable**," not impossible. *Id.* at 236 (emphasis add).

because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise." *Id*. (cleaned up).

That is equally true of the EEOC process under the ADEA. As the EEOC explained in its amicus brief in *Logan*: "Allowing employers to displace Congress's judgment in Title VII" regarding its 90-day statute of limitations for suit-filing would "significantly curtail the rights that Congress gave employees . . . to seek the EEOC's assistance" before filing their legal claims for relief. EEOC Amicus Brief at 7-8, *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019) (No. 18-1381), Doc No. 13.[16] That ninety-day period "plays a critical role in Title VII's integrated scheme because it gives charging parties, who often file pro se, time to assess their remaining options after the Commission's disposition of their charges, as well as to conduct a preliminary investigation, accumulate the filing fee, and find and retain counsel." *Id*. at 21.[17]

Contrary to IBM's bold assertion (Doc No. 27 at 10), *Ramirez* did not "expressly reject" Mr. Rumsey's argument. Although the court explained that, under state law, the statute of limitations could in some circumstances be shortened,[18] its conclusion that the statute of limitations could not be shortened in that case without interfering with the plaintiff's ability to vindicate his

---

[16] *See also* EEOC Amicus Brief in *Thompson* (Ex. 1 at 31) (emphasizing that the pre-suit process in the ADEA is critical to its effectuation of the right to be free of age discrimination); *Gildea v. BLDG Mgmt*., 2011 WL 4343464, at *4 (S.D.N.Y. Aug. 16, 2011) (explaining that "[a]rbitration contracts prevent effective vindication of rights when, for example, they . . . shorten the statute of limitations provided for by statute").

[17] The EEOC's Amicus Brief in *Logan* also explains how allowing contractual limitations periods to override Title VII's 90-day filing deadline would undermine its ability to receive discrimination charges and undermine the statute's "integrated, multistep enforcement procedure." *Id*. at 14. IBM's 300-day deadline—with no tolling or extension allowed for workers to participate in the EEOC's investigation and conciliation process—effectively deters aggrieved workers from filing charges with the EEOC or cooperating with its investigation and conciliation procedures. Doc No. 22, ¶ 125. Thus, IBM's 300-day statute of limitations is unenforceable because it "materially interferes with communication between an employee and the Commission" and unlawfully impairs "the Commission's ability to investigate charges of systemic discrimination." *EEOC v. Astra U.S.A., Inc*., 94 F.3d 738, 744 (1st Cir. 1996) (quoting *EEOC v. Shell Oil Co*., 466 U.S. 54, 69 (1984)).

[18] For the reasons described above, the First Circuit's decision in *Anderson* and the Sixth Circuit's decision in *Thompson* compel a finding that the ADEA's statute of limitations cannot be waived.

16

rights to be free from discrimination is exactly on point here. Moreover, *Ramirez* is not an outlier, as other state supreme courts have also held that statutes of limitations under state laws protecting workers cannot be contractually shortened when doing so interferes with underlying public policy. For example, the New Jersey Supreme Court explained that a "shortened time frame for instituting legal action or losing that ability hampers enforcement of the public interest" by the state's civil rights agency and victims of discrimination.[19]

IBM's interpretation of the filing deadline in its Separation Agreement thus prevents workers from vindicating their statutory rights under the scheme carefully crafted by Congress in the ADEA by requiring them to file a claim in arbitration at the same time as their deadline to file an administrative charge with the EEOC. Doc No. 22, ¶ 129. Rather than being able to participate in and benefit from the EEOC's investigation, determination, and conciliation efforts before filing suit as Congress intended, workers are forced to start arbitrating their claims before the conclusion of the EEOC investigation. *Id*. Here, the EEOC investigation and conciliation process took more than four years, which is typical for investigations of nationwide, systemic discrimination that are often met by resistance by the employer. *Id*. ¶ 130. Because of the EEOC's broad statutory powers to investigate pre-suit, it was able to obtain both aggregate statistical data from IBM showing that older workers were statistically more likely to be laid off and "corroborating testimony from dozens of witnesses nationwide." *Id*. ¶¶ 11, 134-35. But individual workers could not have obtained that same evidence of age discrimination on their own without filing a claim for relief in court or in arbitration. *Id*. ¶ 134. Thus, as this case proves, a worker's statutory right to participate in the EEOC process before filing suit serves an essential role in enforcement of the ADEA: it

---

[19] *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 530 (N.J. 2016); *see also Pfeifer v. Fed. Exp. Corp.*, 297 Kan. 547, 558 (Kan. 2013) ("There is little question that restricting an employee's time to bring a retaliatory discharge claim for a job termination suffered following that employee's exercise of a statutory right necessarily impedes the enforcement of that right and the public policy underlying it.").

gives workers information about evidence of discrimination that they likely would not otherwise have access to—the very same information that IBM denied laid-off older workers like Mr. Rumsey when it terminated them—and a possible finding of discrimination by the EEOC that may be admissible in a future civil action in court or in arbitration. *Id*. ¶ 133. The EEOC process also serves another statutory purpose: ensuring that the EEOC attempts to conciliate claims **before** the parties expend resources on litigation.[20] Here, the conciliation portion of the EEOC investigation began in September 2020, after the EEOC found reasonable cause to believe that IBM had engaged in unlawful age discrimination. Doc No. 22, ¶ 144. If Mr. Rumsey had filed in arbitration in December 2016—within 300 days of his termination—he would not have been able to exercise his statutory right to participate in conciliation before filing suit, thus undermining Congress's intention that the EEOC attempt conciliation before a suit is filed. *Id*.

IBM erroneously argues that its purported 300-day deadline for filing an arbitration demand does not prevent employees from effectively vindicating their rights under the ADEA because that 300-day deadline is the same as the deadline for filing a charge of age discrimination with the EEOC. Doc No. 27 at 6 & n. 2. That argument rests on a false premise long ago rejected by the Supreme Court: "[A] charge of employment discrimination is **not** the equivalent of a complaint initiating a lawsuit." *EEOC v. Shell Oil Co*., 466 U.S. 54, 68 (1984) (emphasis added). Instead, the function of an EEOC charge "is to place the EEOC on notice" so it can "then undertake[] an investigation into the complainant's allegations of discrimination." *Id.*; *see also EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999) ("By filing a charge,

---

[20] *See* 29 U.S.C. § 626(d)(2) (EEOC "shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion"); *see also Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) ("That language is mandatory, not precatory."); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1094 (4th Cir. 1982) (explaining that allowing a worker to receive a notice of right to sue from the EEOC before filing suit serves the purpose of "forestalling litigation until EEOC has had time to explore the possibility of conciliation").

an individual does not file a complaint seeking relief, but merely informs the EEOC of possible discrimination.").[21]

    To initiate an EEOC investigation, a worker does not need to meet the same pleading standards that are required when filing a claim in arbitration or court. *See Graniteville Co. (Sibley Div.) v. EEOC*, 438 F.2d 32, 38 (4th Cir. 1971) ("The purpose of [a charge] is only to initiate the EEOC investigation, not to state sufficient facts to make out a prima facie case."). Mr. Rumsey's charge of discrimination with the EEOC was only a few sentences, essentially pleading for help from the EEOC to find out the critical comparator information IBM refused to provide him: "I was not provided with any of the required OWBPA information," including "the number of employees being let go and the ages of employees being let go." Doc No. 22, ¶ 120.

    IBM misstates the facts and law in contending that Mr. Rumsey filing a charge "inform[ing] the EEOC of **possible** discrimination," *Frank's Nursery & Crafts, Inc.*, 177 F.3d at 455 (emphasis added), somehow proves that he could have just as easily filed an adversarial claim for relief in arbitration, paid a filing fee, survived a motion to dismiss for failure to state a claim, attempted to discover and prove his case under the Federal Rules of Evidence, and received a binding decision. Doc 22, ¶¶ 41-51. To the contrary, even IBM's Separation Agreement acknowledges that the arbitration process functions as a substitute for the employee's "right to a court action" to reach a binding resolution of their ADEA claims, not the right to an EEOC investigation. *Id.* ¶ 44. Nonetheless, IBM glibly asserts that "[i]t would have been beyond simple for Rumsey to file his charge and simultaneously send a copy of it to IBM with a cover letter stating that he demanded

---

[21] "Charges are filed with the EEOC by lay-complainants who are unfamiliar with the niceties of pleading, and nearly always are without the assistance of counsel. The Commission then sets about a nonadversary investigation (in which respondents are encouraged to submit whatever evidence and arguments they regard as relevant) in an effort to determine only whether reasonable cause exists to believe that the charge is true." *Graniteville Co.*, 438 F.2d at 38-39.

arbitration for the reasons explained 'in the attached.'" Doc No. 27 at 13. But these two processes are not remotely the same.

In short, the ADEA's 90-day statute of limitations guarantees "a plaintiff's ability to pursue and complete the EEOC administrative process" so that they can vindicate their statutory rights. *Thomas v. EOTECH, LLC*, No. CV TDC-23-3313, 2024 WL 5239487, at *9 (D. Md. Dec. 27, 2024). And by purportedly requiring Mr. Rumsey to file an arbitration demand within 300 days, IBM interfered with his ability to vindicate those rights. If IBM wanted to preserve the ability to participate in the EEOC process as it claims, it only had to include a term in its arbitration agreement tolling its "limitations period while an administrative charge is pending." *Id*. It failed to do so, rendering its Time Limits provision unenforceable under the effective vindication doctrine, and, for the same reasons, because it is unconscionable under New York law, *see* Doc No. 22, ¶¶ 151-155.

### D. IBM falsely claims that three courts of appeals have rejected "claims nearly identical to his" when they have instead addressed enforceability arguments based on the piggybacking rule, which Mr. Rumsey is *not* relying on.

Despite IBM's claims of a monolith of precedent opposing Mr. Rumsey's position, Doc No. 27 at 1-2, 6-7 & n.2, all three circuit court cases cited by IBM address challenges to the deadline in IBM's arbitration agreement based on "the '**piggybacking rule**,' a judge-made exception to the ADEA's administrative-exhaustion requirements." *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 78 (2d Cir. 2023) (holding that "**the piggybacking rule** does not apply to arbitration and, in any event, it is not a substantive right under the ADEA") (emphasis added), *cert. denied sub nom. Abelar v. IBM*, 144 S. Ct. 827 (2024); *Smith v. IBM*, No. 22-11928, 2023 WL 3244583, at *5 (11th Cir. May 4, 2023) (rejecting plaintiff's argument "that the arbitrator erred in rejecting her reliance on the ADEA's '**piggybacking' rule**") (emphasis added); *Owens v. Int'l Bus. Machines Corp.*, No. 23-7002, 2024 WL 2991203, at *3 (D.C. Cir. June 14, 2024) (stating it was

addressing argument "that any contractual waiver of **the piggybacking rule** is unenforceable") (emphasis added).[22]

Mr. Rumsey's FAC does *not* argue that IBM's alleged 300-day filing deadline is unenforceable because it violates the piggybacking rule. Mr. Rumsey filed a timely charge with the EEOC, Doc No. 22, ¶146, and so would have no need to call upon this judicial exception to the administrative exhaustion requirement. Further, in those three circuit decisions cited by IBM, plaintiff's counsel conceded IBM's 300-day interpretation of its Time Limits provision, while Mr. Rumsey strenuously disagrees with that interpretation. *See id.* ¶¶ 147-149.

## II. In the Alternative, under New York Contract Law, IBM's Two-Part Time-Limits Provision Is Too Vague and Disjointed to Provide the Required Clear Notice of Waiver or Even to Form an Agreement about the Filing Deadline.

Even if the ADEA's statute of limitations were waivable (which it is not), IBM's purported 300-day contractual time limit would be unenforceable on the alternative ground that the arcane and disconnected language IBM chose to use does not meet the clear notice requirement under New York state law for contractual waivers of limitations periods in civil rights statutes. Under New York law, contractual provisions designed to shorten the time limit for bringing a federal civil rights claim must "specifically refer to such federal claims and **clearly express** the intent to shorten the limitations period in which a party may bring an action based on a federal claim."[23] IBM's

---

[22] IBM also relies on other cases from within the Second Circuit that similarly did not address the same challenge raised by Mr. Rumsey in this case. *See* Doc No. 27 at 6 (citing *Lodi v. IBM*, 2022 WL 2669199 (S.D.N.Y. July 11, 2022), which concerned whether piggybacking is a substantive right, and *Washbish v. IBM*, 2023 WL 2433431 (D. Conn. Mar. 9, 2023), in which the plaintiff argued she was fraudulently induced to sign the separation agreement and that the arbitration agreement was unenforceable, and attempted to litigate her employment discrimination claim in court).

[23] *Friedmann v. Raymour Furniture Co.*, No. CV 12-1307 LDW AKT, 2012 WL 4976124, at *2 (E.D.N.Y. Oct. 16, 2012) (emphasis added) (citing *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 53 F. Supp. 2d 278, 282–84 (E.D.N.Y. 1999)); *see also Chase v. Columbia Nat. Corp.*, 832 F. Supp. 654, 659–60 (S.D.N.Y. 1993) (stating that under New York state law, "Agreements limiting the time in which an action can be brought are viewed cautiously and construed strictly against the party invoking the shorter period" and "the intention to establish a shorter period must be clearly set forth") (citing numerous cases).

Time Limits provision falls far short of that standard. It does not "specifically refer" to any federal civil rights claims, much less the ADEA. *Friedmann*, 2012 WL 4976124, at *2. Indeed, IBM chose to provide no specific time limit, unlike the arbitration agreements in the New York cases it cited.[24]

Because IBM's Separation Agreement required a release of most federal civil rights claims other than under the ADEA, it would have been an easy and obvious drafting decision for IBM to insert a straightforward arbitration filing deadline of 300 days for ADEA claims. Instead, consistent with its other efforts to obfuscate its unlawful scheme to replace thousands of older workers, it included an esoteric reference to claims "which must first be brought before a government agency." Doc No. 22-2 at 5. That phrase inherently requires specialized legal knowledge to interpret and, even with that knowledge, does not clearly denote federal civil rights claims or ADEA claims. It could, for example, be referring to claims for workers' compensation or unemployment compensation. And, given the recognized exceptions to the administrative exhaustion requirement for the ADEA and other laws, it certainly does not "clearly express the intent to shorten the limitations period" for ADEA claims. *Friedmann*, 2012 WL 4976124, at *2.[25]

---

[24] *See* Doc No. 27 at 19 (citing *Curtis v. Marino*, 201 A.D.3d 584, 585 (N.Y. App. Div. 2022) (upholding arbitration agreement's filing deadline of a "one-year period"). *Ortegas v. G4S Secure Sols. (USA) Inc.*, 156 A.D.3d 580, 580 (N.Y. App. Div. 2017) (("The employment application unambiguously shortened the applicable statute of limitations to six months.")); *see also City of Yonkers v. 58A JVD Indus., Ltd.*, 115 A.D.3d 635, 638 (N.Y. App. Div. 2014) (applying two-year contractual statute of limitations because it was "unambiguous and enforceable, measurable from the $55,866.63 final payment issued in October 2008, as defined by the parties' contract".

[25] For example, the First Circuit recognizes the single filer rule, which allows a plaintiff who has not exhausted administrative remedies to join an existing ADEA suit, provided that one of the named plaintiffs in that suit have exhausted such remedies. *Pérez-Abreu v. Metropol Hato Rey LLC*, 5 F.4th 89 (2021). Because Mr. Rumsey filed at timely charge with the EEOC, he is not relying on this rule except to reinforce his point that IBM's Time Limits provision is too murky to form a contract about the filing deadline. Under New York law, there must be "a meeting of the minds" and "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 28 N.Y.3d 439, 448 (2016). "It is black letter law that the burden of proving the existence, terms, and validity of a contract rests on the party seeking to enforce it." *Striltschuk v. Hryckowian*, 202 A.D.3d 497, 497 (N.Y. App. Div. 2022). *See generally* Doc No. 22, ¶¶ 155-165.

To make matters worse, the first clause of IBM's Time Limits provision states that the time for filing an arbitration demand *is* the statutory limitations period, which would not put a reasonable worker on notice that they are waiving anything. And the second clause does not add clarity, providing that, "or, if the claim is one which must first be brought before a government agency," it must be filed "no later than the deadline for the filing of such a claim." Doc No. 22-2 at 5. If anything, the reference at the end of the second clause to "the deadline for the filing of such a claim" reinforces the idea that this is *not* a waiver of the statutory limitations period, and it is certainly not the requisite clear expression of the intent to waive the statute of limitations that would normally apply. Indeed, the phrase "the deadline for the filing of such a claim" can reasonably be interpreted to refer to the deadline for filing a complaint in court after administrative exhaustion, not the deadline for filing an initial charge with an administrative agency.[26] The term "charge" is generally used to refer to the initial form filed with the EEOC, and the word "claim" is used to refer either to a plaintiff's broader cause of action, or to the civil action filed in court after the conclusion of the administrative exhaustion process.[27]

Further, IBM's Time Limits provision is contradictory even under IBM's own interpretation. On the one hand, IBM asserts that Mr. Rumsey "was not required" to file an EEOC charge within 300 days of his termination notice "because the ADEA's exhaustion and timeliness provisions do not apply to arbitration." Doc No. 27 at 1, 11. On the other hand, it bases its entire

---

[26] *See Friedmann*, 2012 WL 4976124, at *3 (holding that the phrase "claim or lawsuit" is "ambiguous in the context of federal claims that require an administrative filing—such as employment discrimination claims under the ADA and ADEA"). Moreover, to a reasonable worker without specialized legal knowledge, the "deadline for filing of such a claim" suggests that the same deadline applies in arbitration that would normally apply to that type of claim in court, not that the deadline was being substantially shortened.

[27] *See Jenkins v. Housing Court Department*, 16 F.4th 8, 17 (1st Cir. 2021) (using "charge" to refer to the form filed with the administrative agency, and "claim" to refer to the underlying cause of action); *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109–10 (2002) (same).

theory of a 300-day filing deadline on a directly opposite premise: "because Rumsey **was required** to file an EEOC charge within 300 days of his termination (December 2016), he was required to submit his arbitration demand within that same period." *Id.* at 3 (emphasis added). That IBM—as the drafter of the Agreement—cannot come to a reasonable, consistent interpretation of its meaning underscores the Agreement's overriding ambiguity.

Finally, by using the word "or," the Time Limits provision appears to give workers the option to file within the statutory limitations period *or* to the second alternative, further confusing a reasonable worker as to what the applicable deadline is and whether they are waiving the statute of limitations that would apply in court.[28]

IBM unpersuasively argues that its Time Limits provision cannot reasonably be interpreted as adopting the ADEA's 90-day limitations period because that would supposedly make the first and second clauses redundant, violating the rule disfavoring interpretations that render language superfluous. *See* Doc No. 27 at 19 (citing *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003)). But that rule does not apply when the drafter is subject to a heightened notice requirement, nor does it give a court license to "strain language beyond its reasonable and ordinary meaning." *Shaw Grp. Inc.*, 322 F.3d at 124. Here IBM's "duplication suggests only a certain carelessness in drafting." *Id.* Given that IBM made New York law applicable to its agreement and thus should have known that it was required to "clearly express the intent to shorten the limitations period," *Friedmann*, 2012 WL 4976124, at *2, IBM could easily have drafted a clear statute of limitations provision by indicating the number of days, months, or years within which a worker

---

[28] Alternatively, based on the language of the agreement, the Court should hold that it unambiguously does not bar Mr. Rumsey's claims, or, even if the Time Limits provision is ambiguous, that it does not bar Mr. Rumsey's claims given the rule that "ambiguities in contracts must be construed against the drafter." *Guardian Life Ins. Co. of Am. v. Schaefer*, 519 N.E.2d 288, 289 (N.Y. 1987). IBM's agreement contains an express provision that questions of its "enforceability" must be decided by a court. Doc No. 22, ¶ 34; Doc No. 22-2 at 3.

must file a demand for arbitration, or, at the very least, specifying that the deadline was the one for filing "such a claim" *with the administrative agency*. It failed to do either.

Likewise, IBM's argument that Mr. Rumsey's interpretation would lead to "absurd results" is unavailing because those results are a problem of IBM's own making. IBM contends that, if the deadline were 90 days from the EEOC notice of right to sue, then there would be no deadline for workers who did not first exhaust their claims with the EEOC. Doc No. 27 at 20. But that outcome was the result of IBM's own drafting choices: it chose not to require exhaustion, and then also chose not to set a definite deadline for workers to bring claims. It could easily have avoided the results it now complains of by doing either. In any event, the Supreme Court has squarely rejected IBM's argument that an indefinite statute of limitations is inherently unfair for a claim that is the subject of an EEOC charge and investigation. *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. at 355, 372–73 (1977) (noting that by statute the "defendant is alerted to the possibility of an enforcement suit within 10 days after a charge has been filed [with the EEOC]. This prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action").

Date: February 3, 2025                    Respectfully submitted,

                                          /s/ David G. Webbert
                                          David G. Webbert
                                          Olivia R. Blom
                                          Johnson & Webbert, LLP
                                          1 Bowdoin Mill Island, Ste. 300
                                          Topsham, ME 04086
                                          Tel: (207) 623-5110
                                          Email: dwebbert@work.law
                                          Email: oblom@work.law

                                          /s/ Daniel H. Silverman
                                          Daniel H. Silverman
                                          Cohen Milstein Sellers & Toll PLLC
                                          769 Centre St., Suite 207

Boston, MA 02130
Tel: (617) 858-1990
Email: dsilverman@cohenmilstein.com

Joseph M. Sellers
Brian Corman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Email: jsellers@cohenmilstein.com
Email: bcorman@cohenmilstein.com

Shelby H. Leighton
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Tel: (202) 797-8600
Email: sleighton@publicjustice.net

Steven M. Tindall
Gibbs Law Group LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel: (510) 350-9700
Email: smt@classlawgroup.com

## REQUEST FOR ORAL ARGUMENT

Under Local Rule 7.1(d), Plaintiff requests oral argument on IBM's Motion to Dismiss the First Amended Complaint.

Date: February 3, 2025                    Respectfully submitted,

                                          /s/ David G. Webbert
                                          David G. Webbert

**Certificate of Service**

I certify that on February 3, 2025, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 3, 2025.

/s/ David G. Webbert
David G. Webbert