**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————————
                                                    )
MICHAEL RUMSEY,                                     )
                                                    )
          Plaintiff,                                )
                                                    )
                                                    )    Civil Action No. 24-CV-12187-AK
v.                                                  )
                                                    )
INTERNATIONAL BUSINESS                              )
MACHINES CORPORATION,                               )
                                                    )
          Defendant.                                )
———————————————————————)

<u>**MEMORANDUM AND ORDER ON INTERNATIONAL BUSINESS MACHINES**</u>
<u>**CORPORATION'S MOTION TO DISMISS**</u>

**ANGEL KELLEY, D.J.**

          This case involves the Age Discrimination in Employment Act ("ADEA") and an

arbitration agreement.  Plaintiff Michael Rumsey ("Plaintiff" or "Rumsey") brings this case

against his former employer, International Business Machines Corporation ("IBM" or

"Defendant"), seeking a declaration that the 300-day deadline in his arbitration agreement for

filing an arbitration demand with IBM is invalid.  Alternatively, Rumsey asks this Court to

declare that the filing provision is unconscionable or that no agreement was ever formed.

Maintaining its position that the 300-day filing deadline is enforceable, IBM moves to dismiss

Plaintiff's Amended Complaint.  [Dkt. 26].  The Court answers the question posed to it in

Plaintiff's favor: the 300-day deadline for filing a demand for arbitration is invalid.  The

arbitration agreement cannot waive the statute of limitations of the ADEA.  The Court rules

Plaintiff had ninety days after receiving a notice of a right to sue from the Equal Employment

Opportunity Commission ("EEOC") to file his arbitration demand.  The Court acknowledges

IBM's well-crafted arguments, both in their filings and at the hearing, which relies heavily on Second Circuit law and other related litigation. Since the hearing, the Court has more deeply reviewed the cited cases and reflected on the arguments made by both parties. IBM's position, while initially more persuasive due to the number of non-binding decisions in its favor, cannot overcome binding precedent of the First Circuit. Accordingly, Defendant's Motion to Dismiss is **DENIED**.

## I.    BACKGROUND

### A.  Facts

Unless otherwise stated, the facts as presented appear as they have been alleged in the Amended Complaint. [See Dkt. 22]. Rumsey was formerly employed by IBM. IBM operates as a technology services and equipment provider, employing about 300,000 people worldwide and holding offices across Massachusetts. Rumsey worked at IBM's office in Cambridge, Massachusetts until he was terminated by a group reduction in force in March 2016.[1] Rumsey was fifty-two years old at the time of his termination.

When Rumsey was terminated, he was presented with a packet that contained a document called a "Resource Action Separation Agreement" with an attachment titled "Arbitration Procedure and Collective Action Waiver" that mandated all ADEA claims to be brought individually in arbitration. In exchange for a payment equal to one month's salary and three months of continued health and life insurance benefits, the Separation Agreement required Rumsey to waive all claims he may have against IBM, except for any claims under the ADEA or claims that cannot be released by private agreement, which were required to be brought only in

---

[1] The Amended Complaint initially asserts that Rumsey's termination occurred on May 31, 2016. [Dkt. 22 ¶ 9]. However, both parties appear to agree that termination occurred in March 2016. [Id. ¶ 100; Dkt. 27 at 2]. The Court will use March 2016 when referencing Rumsey's termination since both parties agree and it is not material to the issue discussed.

individual arbitration.  The Separation Agreement gave Rumsey thirty days to consider the offer

and advised him to consult an attorney before accepting.  Rumsey signed the Separation

Agreement within thirty days as required by the Separation Agreement.  The Agreement

included a timing provision ("timeliness provision") which imposed a deadline for former

employees to file an arbitration demand with IBM in relation to any ADEA claim:

> To initiate arbitration, you must submit a written demand for
> arbitration to the IBM Arbitration Coordinator no later than
> the expiration of the statute of limitations (deadline for filing)
> that the law prescribes for the claim that you are making, <u>or,
> if the claim is one which must first be brought before a
> government agency, no later than the deadline for the filing of
> such a claim</u>. If the demand for arbitration is not timely
> submitted, the claim shall be deemed waived. The filing of a
> charge or complaint with a government agency or the
> presentation of a concern through the IBM Open Door
> Program shall not substitute for or extend the time for
> submitting a demand for arbitration.

[Id. at ¶ 94 (emphasis added) (quoting Dkt. 22-2  at 5)].  Within a few months in July 2016,

Rumsey filed a charge of discrimination with the EEOC alleging that IBM had engaged in age-

based discrimination in violation of the ADEA.  The EEOC initiated an investigation into the

charge, as well as those made by sixty-one similarly situated former IBM employees who were

terminated in one of IBM's group reductions in force.  Over four years later in September 2020,

the EEOC issued a determination that there was reasonable cause to believe IBM had engaged in

age-based discrimination in its mass layoffs between 2013 and 2018.  In coming to this

determination, the EEOC's investigation found that older workers made up 85.85% of the total

potential pool to be considered for layoffs.  This data, along with witness testimony and

messages from IBM management, led the EEOC to find reasonable cause that IBM had acted in

violation of the ADEA.

On August 27, 2021, the EEOC issued a notice of right to sue to Rumsey and other laid-off workers who had filed charges with the agency but were unable to reach a satisfactory agreement with IBM during the EEOC's conciliation process.  Rumsey filed his individual arbitration demand with IBM on November 23, 2021— eighty-nine days after receiving his right to sue notice—alleging age discrimination under the ADEA.  IBM contends Rumsey's arbitration demand was untimely.  IBM asserts that the Separation Agreement signed by Rumsey required arbitration to be initiated by December 2016—300 days from his March 2016 termination date.  This reading of the Separation Agreement would have required Rumsey to have filed his arbitration demand more than four years before the EEOC issued a notice of the right to sue.  Rumsey entered into an agreement with IBM to stay his arbitration demand pending the outcome of other related cases against IBM in other courts.  He subsequently filed this suit.

### B.  ADEA

Congress enacted the ADEA in 1967 "with a view towards ending workplace discrimination based on age."  Rossiter v. Potter, 357 F.3d 26, 28 (1st Cir. 2004).  Through enactment of the ADEA, Congress sought "to promote employment of older persons based on their ability rather than [their] age."  29 U.S.C. § 621(b).  Courts have noted the need to apply the statute liberally to achieve its intended purpose.  Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 751 (1st Cir. 1988) ("The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.").

In furtherance of this goal, Congress set out a procedure for individuals seeking to bring a claim of workplace age-discrimination under the ADEA.  See 29 U.S.C. § 626(d)-(e).  To seek relief under the ADEA, an individual is prohibited from commencing a civil action under the

statute "until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1).  Such charge must be filed first with the EEOC within 180 or 300 days of the alleged unlawful conduct.[2]  Following receipt of such charge, the EEOC will promptly investigate and seek to eliminate such unlawful employment practices through informal methods including conciliation.  29 U.S.C. § 626(d)(2).  Should a charge filed with the EEOC be dismissed or otherwise terminated, the EEOC shall notify the charging party, who may then file a civil action "within 90 days after the date of the receipt such notice."  29 U.S.C. § 626(e).

### C.  OWBPA

In 1990, Congress amended the ADEA with the Older Workers Benefit Protection Act ("OWBPA"), which sets out strict limitations for waiver of rights under the ADEA, with waiver assessments being "separate and apart from contract law."  Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998); see 29 U.S.C. § 626(f).  Congress enacted the OWBPA with the purpose of protecting older workers from the coerced waiver of their rights under the ADEA. Commonwealth of Massachusetts v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134, 143 (D. Mass. 2001) (citing S. Rep. No. 101–263, at 5 (1990)).  Apparent in the legislative history is Congress' concern of voluntary separation agreements that serve to force employees to waive their rights.  Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 660 (5th Cir. 1995) (citing S.Rep. No. 101-263,  at 31–35 (1990)).  Such a concern is amplified in the context of large-scale terminations where initial detection of age-based discrimination is more difficult.  Krane v. Cap.

---

[2] 29 U.S.C. § 626(d)(1)(A)-(B).  The 300-day deadline is applicable in this case as Massachusetts state law prohibits age discrimination in employment and has a state agency dedicated to enforcing such law.  29 U.S.C.§ 626(d)(1)(B); 29 U.S.C. § 633(b); see also Connolly v. Shaw's Supermarkets, Inc., 355 F. Supp. 3d 9, 16 (D. Mass. 2018) ("The ADEA requires aggrieved employees to file charges with the EEOC within 180 days of the alleged discrimination but in states with their own discrimination laws (such as Massachusetts) employees must file with the EEOC within 300 days.").

One Servs., Inc., 314 F. Supp. 2d 589, 605 (E.D. Va. 2004) (citing S.Rep. No. 101–79, at 9, 13 (1989)).

To protect older workers from such concerns, the OWBPA makes unenforceable any waiver of rights under the ADEA unless it is "knowing and voluntary." 29 U.S.C. § 626(f)(1). The OWBPA sets out certain minimum requirements that are prerequisites for showing a waiver was knowing and voluntary under the provision. 29 U.S.C. § 626(f)(1)(A)-(H). In his Amended Complaint, Rumsey highlights two of these provisions which are most pertinent to this Court's discussion. [Dkt. 22 at ¶ 77-78].

First, Rumsey asserts that since the Separation Agreement involves an exit incentive offered to a group or class of employees, OWBPA required IBM to inform him in writing of "the job titles and ages of all individuals eligible or selected for the program." [Id. at ¶ 77; 29 U.S.C. § 626(f)(1)(H)(ii)]. Second, Rumsey highlights OWBPA's requirement that any waiver be "written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." [Id. at ¶ 78; 29 U.S.C. § 626(f)(1)(A)]. Rumsey asserts that IBM's failure to abide by these requirements is a violation of the OWBPA. [Id. at ¶ 79].

## II.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. See id. Factual allegations must be accepted as true, while

legal conclusions are not entitled to credit. Id. A "court may not disregard properly [pleaded] factual allegations, even if. . . actual proof of those facts is improbable." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citation modified). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III.    DISCUSSION

In moving to dismiss Plaintiff's Amended Complaint, IBM makes three arguments: (1) the timeliness provision is valid and enforceable; (2) the timeliness provision is not unconscionable; and (3) a valid agreement was formed. In opposing the motion to dismiss, Plaintiff primarily argues that the ADEA's limitations period cannot be contractually waived, so it must be deemed invalid. In the alternative, Plaintiff argues that IBM's timeliness provision is too vague under New York contract law or that no agreement was formed. The timeliness provision is at the center of the Court's analysis.

The parties ask this Court to consider the lawfulness of this provision: Plaintiff urges this Court to rule it invalid while IBM maintains that the 300-day deadline to file an arbitration demand is permissible. The Court's analysis requires a roadmap. The first step involves two parts: the Court first examines whether a conflict exists between the ADEA and the timeliness provision and, if so, whether the proper forum for resolution is the Court or an arbitrator. Second, the Court examines if the ADEA's statute of limitations are substantive or procedural in nature. Lastly, the Court examines whether an arbitration agreement can shorten the statute of

limitations.  As this Court considers issues of first impression, it must rely on persuasive authority to guide its analysis in the absence of controlling precedent.

### A.  A Conflict Exists

As a threshold question, the Court must determine whether the ADEA's statute of limitations is in conflict with the timeliness provision.  The First Circuit has stated, "[i]n the absence of such a direct conflict, the inquiry ends." Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 122 (1st Cir. 2012).  Where there is a conflict, however, the Court must "determine whether there is ambiguity on the question whether the statute of limitations can be contractually shortened." Id. at 124 (citation modified).  If ambiguity exists, a question of arbitrability arises.  In short, "the arbitrator—not the court—must decide the question of whether the limitations period can be shortened by contract." Id.  The Court will answer the first part of this inquiry, whether there is a conflict, and return to the second question, whether the proper forum for resolution is the Court or an arbitrator.

The Court starts with the first part of the inquiry: whether there is a conflict between the timeliness provision and the ADEA's statute of limitations.  The timeliness provision is hardly a work of art.  Neither is the ADEA.  For starters, there is not a single number mentioned in the timeliness provision.  Sitting at sixty-seven words, the provision directs claimants to review the law that prescribes their particular claim to extrapolate the correct statute of limitations.  Since Rumsey's claim is one alleging age discrimination, he is required to review the ADEA.  The parties agree for purposes of this motion that the timeliness provision has a 300-day deadline. From here, there is little else the parties agree on.  Rumsey's position is that this 300-day deadline is only part of the story.  He contends that the complete statute of limitations as delineated in the ADEA is ninety days after receiving a notice of the right to sue from the EEOC.

IBM argues that the deadline is just the 300 days.[3]  Since the notice of the right to sue from the EEOC comes later than the initial 300-day deadline to file an EEOC charge, the Court discerns a clear conflict.

The First Circuit has adopted the view of other circuits who are "in virtual unanimity in holding that the ADEA filing period is akin to a statute of limitations and is subject to equitable modification." Kale, 861 F.2d at 751.  Thus, the ADEA requires claimants to file their charge with the EEOC within 300 days and then imposes a ninety-day statute of limitations for filing a civil action.  See Connolly, 355 F. Supp. 3d at 16 (first citing Conroy v. Boston Edison Co., 758 F. Supp. 54, 57 (D. Mass. 1991); then citing Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 69 n.3 (1st Cir. 2015)).  The ninety-day statute of limitations, the second deadline in the ADEA, does not begin to run until the EEOC denies the administrative claim.  Id.  Any argument that the ADEA's statute of limitations is just 300 days is squarely foreclosed by the First Circuit.  The ADEA's statute of limitations and the Separation Agreement's deadline are clearly in direct conflict given that Rumsey's actions were within the statutory limitations of ADEA but outside of IBM's arbitration limitations period.

As stated earlier, however, the Court will need to determine whether this conflict contains ambiguity that must be resolved by an arbitrator.  More on that later.  For now, the Court proceeds to the next step of this analysis.

### B.  ADEA's Statute of Limitations Is A Substantive Right And Cannot Be Shortened

Next, this Court addresses whether the ADEA's statute of limitations is procedural or substantive in nature.  The Court acknowledges that, historically, statutes of limitations have

---

[3] IBM also argues that it can waive the limitations period in arbitration agreements. This is discussed later.

been regarded as procedural.  Davis v. Mills, 194 U.S. 451, 454 (1904).  Now, courts are starting to recognize that "[t]he line between 'substance' and 'procedure' shifts as the legal context changes." Lujan v. Regents of Univ. of California, 69 F.3d 1511, 1516 (10th Cir. 1995) (quoting Hanna v. Plumer, 380 U.S. 460, 471 (1965)).  Different legal contexts have engendered different "conclusions about whether a statute of limitations is substantive or procedural."  Id. (collecting cases).  This has introduced the first legal entanglement: circuits disagree when a statute of limitations is substantive or procedural.  The nature of the statute of limitations—whether it is substantive or procedural—is a critical preliminary issue because this Court must protect the non-waivable substantive rights guaranteed by the ADEA.  Substantive rights of the ADEA cannot be waived, see 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273 (2009), while procedural rights are waivable, see In re IBM Arb. Agreement Litig., 76 F.4th 74, 83 (2d Cir. 2023), cert. denied sub nom. Abelar v. IBM, 144 S. Ct. 827 (2024).  This Court wades through competing rulings to arrive at its own following First Circuit binding guidance: the ADEA's statute of limitations is substantive in nature and, thus, cannot be contractually waived.

The clearest disagreement on this matter is between the Second and Sixth Circuits.[4]  The Second Circuit has held that the ADEA's statute of limitations is a procedural right, most recently in a case with similar facts as here.[5]  In re IBM Arb. Agreement Litig., No. 21-CV-6296

---

[4] The Ninth Circuit analyzes shortened limitations periods under an unconscionability analysis.  Ronderos v. USF Reddaway, Inc., 114 F.4th 1080, 1094-95 (9th Cir. 2024) (holding agreement that shortened statute of limitations from three years to one year was substantively unconscionable).

[5] There is one key difference: many of the cases cited by IBM involve the piggybacking exception.  See Smith v. IBM, No. 22-11928, 2023 WL 3244583, at *2 (11th Cir. May 4, 2023); Chandler v. IBM, No. 21-CV-6319 (JGK), 2022 WL 2473340, at *3 (S.D.N.Y. July 6, 2022) (same), aff'd, No. 22-1733, 2023 WL 4987407 (2d Cir. Aug. 4, 2023); Rusis v. IBM, 529 F. Supp. 3d 178, 192 (S.D.N.Y. 2021) (same); In re IBM Arb. Agreement Litig., 76 F.4th 74, 78; Owens v. IBM, No. 23-7002, 2024 WL 2991203, at *2  (D.C. Cir. June 14, 2024); Order Partially Denying Motion to Vacate the Arbitration Award at 10, Wooten v. IBM, No. 2:22-CV-12476,  (E.D. Mich. June 28, 2023). In cases where litigants have failed to file their own administrative charge with the EEOC, they can "piggyback" on the timely filed charge of another plaintiff.  Basch v. Ground Round, Inc., 139 F.3d 6, 9 (1st Cir. 1998).  This is also called the "single filing rule." Pérez-Abreu v. Metropol Hato Rey LLC, 5 F.4th 89, 90 (1st Cir. 2021).  IBM claims

(JMF), 2022 WL 2752618, at *7 (S.D.N.Y. July 14, 2022) ("Because the ADEA's limitations period governs secondary conduct — namely, the time period for filing a suit under the ADEA — it should not be considered a substantive, and therefore *categorically* nonwaivable, right in the arbitration context." (emphasis in original) (citation modified)), aff'd, 76 F.4th 74 (2d Cir. 2023); see also Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886 (2d Cir. 1995).  This reasoning has been applied to similar cases brought against IBM.  Lodi v. IBM, No. 21-CV-6336 (JGK), 2022 WL 2669199, at *4 (S.D.N.Y. July 11, 2022) (concluding timing provision was enforceable since it did not infringe on "the substantive right protected by the ADEA, namely, the right to be free from workplace age discrimination"), aff'd, No. 22-1737, 2023 WL 4983125 (2d Cir. Aug. 4, 2023); see also Washbish v. IBM, No. 3:21-CV-1521 (AWT), 2023 WL 2433431, at *5 (D. Conn. Mar. 9, 2023) (concluding the "ADEA timing scheme" is not a substantive right).  Thus, the Second Circuit is clear that parties can contract to shorten the statute of limitations for an ADEA claim because it is a procedural right.

The Sixth Circuit, however, takes the opposite view.  Relying on Davis, the Sixth Circuit has held that a statute of limitations is substantive in nature when the federal law contains its own limitations period.  Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 831 (6th Cir. 2019).  Since the ADEA has a self-contained limitations period, namely the 300-day deadline to

---

that every federal court that has addressed this issue has held that the timeliness provision is enforceable.  [Dkt. 27 at 6 n.2].

These cases cannot be instructive since the litigants in those cases failed to file an EEOC charge, which is the first required deadline.  By not filing their charge with the EEOC within 90 days, their claim is clearly untimely. Additionally, it is clear that the piggyback doctrine is not a substantive right of the ADEA.  Chandler, 2022 WL 2473340, at *5.  Since Plaintiff did file a timely EEOC charge and availed himself of the administrative process, these cases are inapposite.  IBM *did* cite three cases that did not involve the piggybacking doctrine: Estle v. IBM, 23 F.4th 210 (2d Cir. 2022); Lodi, 2022 WL 2669199, at *1; Washbish, 2023 WL 2433431, at *1.  All three cases are from the Second Circuit.  The Court will give these cases due consideration but notes that, as IBM notes, the cases that include the piggybacking exception do not govern here.  [Dkt. 31 at 3] (stating that "the courts' ultimate conclusion that piggybacking is not a substantive right may not govern here" ).

file a charge and then the 90-day deadline to file a claim, the Sixth Circuit determined it cannot

be prospectively waived.  Thompson v. Fresh Prods., LLC, 985 F.3d 509, 521 (6th Cir. 2021)

(holding the ADEA is "like Title VII" and includes "a self-contained limitation period" that

cannot be prospectively waived).

       The Second and Sixth Circuit conclusions contain more nuance than their initial clear-cut

holdings suggest.  Despite the straightforward ruling that the ADEA's statute of limitations can

be shortened, courts in the Second Circuit have repeatedly held that agreements that change the

statute of limitations for *other* federal claims, like FLSA, are unenforceable.  D'Antuono v. Serv.

Rd. Corp., 789 F. Supp. 2d 308, 340 (D. Conn. 2011) (holding that it would invalidate a

provision that shortens the statute of limitations for a FLSA claim); Castellanos v. Raymours

Furniture Co., Inc., 291 F. Supp. 3d 294, 300 (E.D.N.Y. 2018); Crespo v. Kapnisis, No. 21-CV-

6963 (BMC), 2022 WL 2916033, at *6 (E.D.N.Y. July 25, 2022); Pappas v. City of NY, No. 23-

CV-6010 (LJL), 2024 WL 2093472, at *6 (S.D.N.Y. May 9, 2024); McLaughlin v. Advanced

Commc'ns, Inc., No. CV-09-2311(SJF)(ETB), 2010 WL 11626961, at *4 (E.D.N.Y. Mar. 25,

2010) (same).  It follows from these cases that courts in the Second Circuit do not allow *certain*

federal limitations periods to be shortened.  For example, it is permissible to alter the statute of

limitations in an ADEA case (Lodi) but not permissible to modify the statute of limitations in a

FLSA case (Castellanos).  The resolution of this issue is best suited for another day—and another

court.

       Similarly, the Sixth Circuit has more to say.  In holding that the ADEA's statute of

limitations was substantive in nature, the Sixth Circuit recognized that it was guided by the

EEOC's administrative process.  Specifically, the Sixth Circuit said in Thompson:

              And like Title VII, the ADEA emphasizes the importance
              of the pre-suit cooperative process, outlining the EEOC's

> obligation upon receiving a charge to seek to eliminate any
> alleged unlawful practice by informal methods of
> conciliation, conference, and persuasion. 29 U.S.C. §
> 626(d)(2). Altering the time limitations surrounding these
> processes risks undermining the statute's uniform
> application and frustrating efforts to foster employer
> cooperation.

985 F.3d at 521 (citation modified).  This process can be lengthy but, according to Thompson, is

necessary for conciliation and cooperation to occur.  Id.  Additionally, the Sixth Circuit has held

that "an individual may not contract away her right to file a charge with the EEOC, as such

contracts are void as against public policy."  E.E.O.C. v. Frank's Nursery & Crafts, Inc., 177

F.3d 448, 456 (6th Cir. 1999); Williams v. Dearborn Motors 1, LLC, No. 20-1351, 2021 WL

3854805, at *7 (6th Cir. Aug. 30, 2021) (same).  This "right" finds its home in the federal

statute:

> No waiver agreement may affect the Commission's rights
> and responsibilities to enforce this chapter. No waiver may
> be used to justify interfering with the protected right of an
> employee to file a charge or participate in an investigation
> or proceeding conducted by the Commission.

29 U.S.C. § 626.  After an individual files a charge, the EEOC has "exclusive jurisdiction" over

the charge.  Frank's Nursery & Crafts, 177 F.3d at 456.  Once filed, "EEOC is in command of

the process."  E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 291 (2002).  The Sixth Circuit

concluded that Congress established the pre-suit cooperative process to promote "voluntary

compliance."  Thompson, 985 F.3d at 520.  And "[a]ny alterations to the statutory limitation

period necessarily risk upsetting this delicate balance, removing the incentive of employers to

cooperate with the EEOC, and encouraging litigation that gives short shrift to pre-suit

investigation and potential resolution of disputes through the EEOC and analog state and local

agencies."  Logan, 939 F.3d at 829.  Consequently, the Sixth Circuit concluded that the ADEA's

statute of limitations constitutes a substantive, non-waivable right. This determination rests on the Sixth Circuit's analysis of both the statute's interwoven limitations period and Congress' establishment of the pre-suit process.

So what does this mean for this Court? The Supreme Court has not ruled on this issue. Contrary to IBM's assertion, 14 Penn Plaza does not say that the ***only*** substantive, non-waivable right in the ADEA is the statutory right to be free from workplace age discrimination. [Dkt. 27 at 8]. Instead, the Supreme Court says, "the agreement to arbitrate ADEA claims is not the waiver of a substantive right as that term is employed in the ADEA." 14 Penn Plaza LLC, 556 U.S. at 259 (citation modified). The arbitration agreement's only waiver, it reasoned, was the right to proceed in a court in the first instance. Id. at 265-66. While subtle, this distinction is crucial. The Supreme Court's consideration of one substantive right does not extinguish others; notably, its analysis did not address the ADEA's statute of limitations. Additionally, Rumsey *agrees* that he waived the right to proceed in a court.

The First Circuit has also yet to definitively rule on this circuit split but courts in the First Circuit have indicated their willingness to consider the ADEA's statute of limitations as a substantive right that cannot be waived. A court within this district has stated that "when the asserted statute of limitation is so specific to the right being sued upon that it can be viewed as a condition of the right's creation and a part of the right itself [,] . . . the right-specific statute of limitation is viewed as substantive." Alves v. Siegel's Broadway Auto Parts, Inc., 710 F. Supp. 864, 868 (D. Mass. 1989); see also Alejandro-Ortiz v. P.R. Elec. Power Auth. (PREPA), 756 F.3d 23, 27 (1st Cir. 2014) ("In Puerto Rico, the statute of limitations is a substantive and not a procedural matter."); In re Granderson, 214 B.R. 671, 675 (Bankr. D. Mass. 1997) (stating

"where the statute of limitations is contained in the act itself, and has the characteristics of a statute of repose, the statute of limitations is not merely procedural").

In addition, Anderson v. Comcast Corp., 500 F.3d 66 (1st Cir. 2007) provides insight into how the First Circuit would rule.  In Anderson, the First Circuit held that the statute of limitations for a Massachusetts consumer protections statute could not be shortened by the parties because of the "importance accorded to the four-year statute of limitations for consumers by the legislature."  500 F.3d at 77.  IBM contends that Anderson is inapplicable because the statutes' texts and purposes are different, the timeliness provision is differently worded, and the case was determined under inapplicable state law.  [Dkt. 31 at 4].  The Court agrees the statutes' texts and purposes are different, but also finds these differences to be of little consequence.  As this Court finds, the ADEA's statute of limitations is a non-waivable substantive right, and this is a conclusion consistent with the analysis in Anderson.

While the statute discussed in Anderson was not a federal statute, it similarly contained a limitations period determined by the legislature.[6]  The First Circuit acknowledged and gave considerable weight to the fact that the statute underwent years of revisions and experienced a "progressive lengthening of the statute of limitations," which reflects the legislature's concern that a longer limitations period was "required to allow consumers to effectuate their private cause of action" under the statute.  Anderson 500 F.3d at 76-77.  The ADEA, too, was amended several times, eventually extending the period for which a claim could be filed.  The following legislative history of the ADEA explains why this change happened:

> [This change] allows those individuals to file suit from 60
> days after filing the charge until the expiration of 90 days

---

[6] Chapter 93A's four-year statute of limitations is found in Mass. Gen. Laws ch. 260, § 5A.  Chapter 93A claims "were originally subject to a two-year statute of limitations, which was extended to three years in 1973 before § 5A finally extended it to four years in 1975."  Anderson, 500 F.3d at 76.

> after completion of those proceedings. This avoids the problems created by current law, which imposes a statute of limitations on the filing of suit regardless of whether the EEOC has completed its action on an individual's charge.

137 Cong. Rec. 9505 (1991), 1991 WL 229644, at *H9548. The "problems" as described by Congress in November 1991 is precisely at issue here: the filing of a suit (or claim) before the EEOC has completed its investigation. As another court stated, this "problem resulted in many age discrimination victims losing their rights to go to court, because they were unaware of the ADEA's time limitations for filing a lawsuit, and received no notice from the EEOC that they could—in fact, must—file suit by certain dates." Simmons v. Al Smith Buick Co., 841 F. Supp. 168, 170 (E.D.N.C. 1993) (citation modified) (citing H.R. Rep. No. 102-40(I), at 96 (1991), as reprinted in 1991 U.S.C.C.A.N. 549, 634). Reference to a statute's design and legislative history "may often shed light on congressional intent." Nat. Res. Def. Council, Inc. v. Browner, 57 F.3d 1122, 1127 (D.C. Cir. 1995). That is the case here. Legislative history indicates that Congress "clearly contemplated a window for filing an ADEA action ending ninety days after receipt of a right-to-sue notice from the EEOC." McCray v. Corry Mfg. Co., 872 F. Supp. 209, 216 (W.D. Pa. 1994), aff'd, 61 F.3d 224 (3d Cir. 1995). An agreement to shorten the ADEA's statute of limitations period is disfavored because it will "derogate" the statutory intent. Jackson v. S.A.W. Ent. Ltd., 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009).

The features of the statute in Anderson parallel the discussion of substantive rights in Thompson. Both statutes include a self-contained limitations period and underwent revisions and extended filing deadlines. While the First Circuit has not labeled statutes of limitations as substantive rights—in Anderson or otherwise—this Court finds persuasive the parallel features between Thompson and Anderson. Accordingly, this Court concludes that the ADEA's statute of limitations are substantive rights that cannot be shortened.

### C.  Arbitration Agreements Cannot Waive Substantive Rights

The Court could stop its analysis here.  Yet, IBM maintains that all of Plaintiff's arguments additionally fail because he agreed to arbitration.  IBM's position, in short, is that arbitration fundamentally changes the dispute resolution process.  This Court disagrees.

It is true that federal policy favors arbitration.  The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).  Under the FAA, "a written provision in a contract to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Buckeye Check Cashing, 546 U.S. at 444 (quoting 9 U.S.C. § 2).  IBM's principle argument is that the ADEA's entire administrative process, and thus the ADEA's statute of limitations,[7] does not apply to claims in arbitration because they do not constitute "civil actions" as described in 29 U.S.C. § 626.  [Dkt. 27 at 8].  This argument requires this Court to examine whether "civil actions" includes claims for arbitrations.  For the reasons explained below, this Court holds it does.

To start, the Court reviews this argument with similar scrutiny as a court in another jurisdiction: "[The Sixth Circuit] never really addressed why its holding, which applies to contracts shortening limitations periods generally, would not also apply to such provisions in arbitration agreements—which are likewise contracts."  Trout v. Univ. of Cincinnati Med. Ctr.,

---

[7] Technically, IBM agrees that half of the statute of limitations apply (i.e., the initial 300-day for filing a charge).

LLC, 743 F. Supp. 3d 937, 948 (S.D. Ohio 2024). The Supreme Court has instructed courts to "hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 596 U.S. 411, 418, (2022). This means that the "federal policy favoring arbitration does not totally displace ordinary rules of contract interpretation," Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000) and that courts must enforce "[a]greements to arbitrate according to their terms," Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 167 (1st Cir. 2022) (citation modified). Thus, since a contract cannot waive substantive rights, neither can an arbitration agreement. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). In fact, just like other contracts, when arbitration agreements contain severability clauses allowing for illegal and unenforceable terms to be severed, the remainder of the agreement remains in force. See Kristian v. Comcast Corp., 446 F.3d 25, 53 (1st Cir. 2006) (holding that prohibition against recovery of attorney's fees was severable from arbitration agreement as a whole, allowing arbitration to proceed). Anderson confirms this principle, which severed the unenforceable terms and allowed arbitration to move forward. 500 F.3d at 77.

It is true that the ADEA refers to "civil actions" in the statute. However, many statutes refer to "civil actions" but are subject to arbitration. As the Supreme Court stated, "[i]t is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 100 (2012). Yet, they proceed by arbitration. Id. at 101. ("Thus, we

have repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court.").

It is in this context that this Court must reject the argument that the ADEA's limitations provision only applies to civil actions in court.  [Dkt. 27 at 14] ("To the contrary, the ADEA's administrative-exhaustion process, which triggers the Act's timeliness framework, does *not* apply to arbitrations; it and the ADEA's limitations provision expressly apply only to "civil action[s]."").  This reading of "civil actions" would seriously call into question the many cases involving a statute that created a civil cause of action but ultimately proceeded by arbitration. See Mitsubishi Motors Corp, Inc., 473 U.S. at 629 (enforcing an arbitration agreement for a Clayton Act claim, which allows suits "in any district court of the United States"); Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220 (1987) (holding civil RICO claims were arbitrable although statute directs injured persons to file "in any appropriate United States district courts"); Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 65 (1st Cir. 2015) (discussing Florida Supreme Court's conclusion that a statute that refers to a "civil action or a proceeding" includes arbitration proceedings within its scope).  Additionally, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) does not do the heavy lifting IBM thinks it does.  Gilmer, which involved an ADEA claim, held that "the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration." 500 U.S. at 28–29.  Rumsey *wants* arbitration. IBM's narrow reading of "civil action" is one not supported by the Supreme Court nor the First Circuit.

The Court notes the incongruence of Sixth Circuit cases.  Morrison v. Cir. City Stores, Inc., concluded (in a footnote) that a shortened limitations period in an arbitration agreement was enforceable.  317 F.3d 646 n.16 (6th Cir. 2003).  Two years later, Howell v. Rivergate Toyota,

Inc., upheld an arbitration provision that contained a 180-day limitations period for ADEA claims. 144 F. App'x 475 (6th Cir. 2005). These holdings were confirmed in Logan, which held that a significantly shortened limitations period in a contract, outside an arbitration agreement, was unenforceable. 939 F.3d at 839. Thompson incorporated the reasoning in Logan but did not discuss arbitration. While the Sixth Circuit draws a distinction between arbitration and other contracts regarding shortened limitations periods, this position is at odds with the Supreme Court and the First Circuit.

In Morgan, the Supreme Court held that "a court must hold a party to its arbitration contract just as the court would to any other kind." 596 U.S. at 418. In rejecting arbitration-specific rules, the Supreme Court made clear that the FAA is based on the enforcement of a contract rather than the preference for arbitration. Id. at 418-19. Accordingly, a provision that is invalid in a contract is also invalid in an arbitration agreement. The Sixth Circuit's carve-out for arbitration agreements is precisely the sort of arbitration-specific rule that the Supreme Court warned against. Furthermore, Anderson confirmed that a shortening of the statute of limitations is unenforceable even in arbitration agreements, reinforcing the conclusion that they are on the "same footings as other contracts." Anderson, 500 F.3d at 70. How the Sixth Circuit cases are reconciled, while informative, is not a controlling issue for this case given the Supreme Court and the First Circuit's guidance.

Relevant to the discussion on ADEA waivers is the OWBPA, which establishes specific requirements for a "knowing and voluntary" release of ADEA claims. Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 117 (1st Cir. 1998); 29 U.S.C. § 626(f). The OWBPA places the burden on the party asserting the validity of the waiver, here IBM, to demonstrate that the waiver was "knowing and voluntary." Id. Because this requires a review of material facts, this

is typically reviewed under a motion for summary judgment.  See Commonwealth of
Massachusetts v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134, 142 (reviewing sufficiency of an
OWBPA waiver at the summary judgment stage); see also Duval v. Callaway Golf Ball
Operations, Inc., 501 F. Supp. 2d 254 (D. Mass. 2007); O'Neill v. NY Times Co., No. CIV.A.02-
11785-PBS, 2004 WL 1047941, at *1 (D. Mass. May 7, 2004), aff'd, 145 F. App'x 691 (1st Cir.
2005) (same).  Thus, the Court will refrain from reviewing such argument at this stage.  The
Court, however, points to 29 U.S.C. § 626(f)(4) which states: "No waiver may be used to justify
interfering with the protected right of an employee to file a charge or participate in an
investigation or proceeding conducted by the Commission."  Accordingly, IBM cannot argue the
administrative process only belongs in courts when the statute clearly forbids any waiver from
interfering with such right.  See E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996)
("Thus, any agreement that materially interferes with communication between an employee and
the Commission sows the seeds of harm to the public interest.").

    In addition, in reading the statute closely, this Court finds that the right granted by the
ADEA encompasses both the "right of an employee to file a charge or participate in an
investigation or proceeding conducted by the Commission."  29 U.S.C. § 626 (emphasis added).
Utilizing the conjunctive/disjunctive canon, a plain reading of the statute makes clear that these
two instances create the right in the cumulative, rather than in the alternative, despite its use of
the disjunctive term "or."  See Antonin Scalia & Bryan A. Garner, Reading Law: The
Interpretation of Legal Texts 69 (2012) (stating that "and" joins a conjunctive list, and "or" a
disjunctive list, but with "negatives, plurals, and various specific wordings there are nuances").
This is because the statute explicitly states that participation in the administrative process is a
right for the individual, and an individual would not be able to avail their rights to an

investigation if a charge was not filed in the first instance. Therefore, this Court finds that participating in the investigative process is essential to effectuate Congress' intent.

An amendment in the Civil Rights Act of 1991 contained the following discussion regarding alternative dispute resolution:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact-finding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Pub.L. No. 102–1166, § 118, 105 Stat. 1071, 1081 (1991). As another court said, this statement "evinces a clear Congressional intent to encourage arbitration of Title VII and ADEA claims, not to preclude such arbitration, and that, with regard to the 'authorized by law' language of the 1991 CRA, it seems most reasonable to read this clause as a reference to the FAA [Federal Arbitration Act]." Shaw v. DLJ Pershing, 78 F. Supp. 2d 781, 782 (N.D. Ill. 1999) (quoting Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 365 (7th Cir. 1999)). Congress' endorsement of arbitration as an "appropriate means of dispute resolution" does not signal an intent to dismantle any part of the existing administrative procedure. Had that been its goal, it could have explicitly said so.

Even if IBM were able to succeed in its argument that the administrative process is not required in arbitration, the Court concludes that, once an individual triggers the administrative process, he or she is entitled to the "full panoply of remedies" under the ADEA. Pruiett v. W. End Restaurants, LLC, No. CIV. 3:11-00747, 2011 WL 5520969, at *4 (M.D. Tenn. Nov. 14, 2011). This includes the elaborate pre-suit resolution mechanisms of the ADEA. Thompson, 985 F.3d at 521. Unless there was a "knowing and voluntary" waiver, this conclusion is no different simply because the forum was changed. See Mitsubishi Motors Corp., 473 U.S. at 628

(holding that a party who agrees to arbitrate "does not forgo the substantive rights afforded by the statute; only submits to their resolution in an arbitral, rather than a judicial form").

### D.  Is this a question for the arbitrator

The Court circles back to its very first roadblock: "whether there is ambiguity on the question whether the statute of limitations can be contractually shortened." Escobar-Noble, 680 F.3d at 124 (citation omitted).  Any ambiguity must be resolved by the arbitrator and not this Court.  Id.  If the answer is clear, then the question of arbitrability is one reserved for this Court to decide.  See id.

Once again, this Court turns to Anderson for guidance.  There, the First Circuit stated: "The progressive lengthening of the statute of limitations, and the statutory language emphasizing the centrality of consumer protection, strongly suggest that the Massachusetts legislature did not intend this limitations period to be shortened by contract." Anderson, 500 F.3d at 76.  As this Court previously described, Congress amended the ADEA several times since 1967, expanded the scope of the law, and afforded more protections for older workers.  See St. Louis v. Tex. Worker's Comp. Comm'n, 65 F.3d 43, 45 (5th Cir. 1995) (explaining that the statute of limitations for ADEA suits was two years from the date of the discriminatory act before Congress passed the 1991 Act but was altered to sixty or ninety days after receipt of a notice).[8]  It appears from the changes to the ADEA's statute of limitations, the ADEA's amendments, and the vigorous legislative history, Congress—like the Massachusetts legislature in Anderson—did not intend for the ADEA's limitations to be waived by contract.  In upholding

---

[8] While it is true that the ADEA's revisions do not expressly extend the limitations period, tethering the ninety-day filing deadline to the end of the administrative process has the effect of doing so.  Often, EEOC can take up to two to three years to complete the pre-suit process.  See Andrea Johnson. Reclaiming Our Time: Ending The Use Of Employment Contracts That Shorten The Statute Of Limitations For Title VII Discrimination Claims 31 Geo. Mason L. Rev. 725, 773 (2024).

this clear congressional intent, the Court finds no ambiguity and determines that it is in this Court's province to determine arbitrability.

**IV.    CONCLUSION**

It is at the end of the Court's analysis that this Court highlights a shortcut: this case could have been decided solely with Anderson.  The First Circuit's guidance is clear: an arbitration agreement cannot shorten a statute's limitations period when legislative intent is to the contrary. Because the Court finds that Congress wanted to afford the full limitations period for ADEA claims, IBM's Motion to Dismiss [Dkt. 26] is **DENIED**.

**SO ORDERED.**

Dated: September 30, 2025                              /s/ Angel Kelley
                                                      Hon. Angel Kelley
                                                      United States District Judge